## SKINNER *v.* SKINNER.

1. DIVORCE—ALIMONY—MODIFICATION OF DECREE—JURISDICTION— PROPERTY SETTLEMENT AS BASIS OF DECREE.

Under section 11417, 3 Comp. Laws 1915, after a decree for alimony or other allowance for the wife and children has been made, the court may, from time to time, on petition of either of the parties, revise and alter such decree respecting the amount of such alimony or allowance and the payment thereof, and may make any decree respecting

any of the said matters which such court might have
made in the original suit; and it is immaterial that the
original decree was based upon a property settlement en-
tered into by the parties.

2. Same—Changed Financial Conditions—Modification of De-
cree.

Where the evidence shows that defendant's financial con-
dition has changed since the date of the original decree
so that it is impossible for him to pay plaintiff $100 a
month without depleting and in the end exhausting what
little property he has left, the decree will be so modified
in this court as to require the defendant to pay in a lump
sum the back payments and in the future to pay $75 a
month instead of $100.[1]

Appeal from Genesee; Collingwood, J., presiding.
Submitted January 10, 1919. (Docket No. 21.) De-
cided April 3, 1919.

Petition by Aurah W. Skinner against William D.
Skinner for the enforcement of the terms of a decree
of divorce respecting alimony. Defendant filed a
cross-petition asking for a modification of said decree.
From a decree denying the cross-petition, defendant
appeals. Reversed, and decree entered.

*George W. Cook*, for plaintiff.

*Farley & Selby*, for defendant.

STONE, J. This case is here upon appeal by the
defendant from an order of the court below, denying
the petition of the defendant for a modification of a
decree for the payment of alimony. On September
30, 1911, the plaintiff obtained a decree of absolute
divorce from the defendant upon the ground of ex-
treme cruelty. The parties never had any children.
The record discloses that on August 10, 1911, a prop-
erty settlement was entered into by the parties, in
writing, which agreement was approved by the court,
and the terms thereof were incorporated in the decree

[1]See note in 44 L. R. A. (N. S.) 1026.

made and entered in the case. By the terms of this agreement, as contained in the decree, the defendant agreed to pay the plaintiff the sum of $100 per month for and during her life, and it was provided that if she should survive him, his estate would continue such payments, and the same were made a charge on his estate. In consideration of the agreement to pay the aforesaid sums of money, the plaintiff released her dower in all real estate owned by defendant, and also agreed to convey to defendant all real estate then possessed by her. The real estate then standing in her name and possessed by her, and which she conveyed in pursuance of the terms of said agreement and decree, consisted of three houses and lots in the fourth ward of the city of Flint which the defendant afterwards sold to the Chevrolet Motor Company, realizing therefrom, over and above a mortgage indebtedness of $500, the sum of about $3,000.

The defendant made the payments agreed upon to the plaintiff to, and including January 1, 1916, when he, without first obtaining consent of the court, reduced the payments to $50 per month. In 1913 the defendant remarried.

At the time of the property settlement it is claimed by the defendant, and we think supported by the evidence, that he was worth about $12,000. This included the three houses and lots in the fourth ward of the city of Flint, above referred to. They had been purchased by the defendant and paid for by him out of his own funds; but for some unexplained reason the title to the houses and lots stood in the name of the plaintiff. Defendant's property also included $7,-000 to $8,000 which he had invested in the lumber business in the city of Flint which he afterwards was obliged to discontinue at a loss of about $2,000; and it is claimed by the defendant, and appears to be uncontradicted, that he subsequently suffered another

loss of about $2,000 through an investment he had previously made in a corporation known as the Wolcott Packing Company.

At the time of the conference leading up to this property settlement the defendant was drawing a salary of $2,200 per annum in the said lumber business. After the lumber business was discontinued, defendant was unable to go into other business that would pay a salary of that amount; and it is claimed by him that in order to pay the plaintiff the $100 per month provided by the decree, for the years preceding January 1, 1916, he sold the said three houses and lots and used up most of the money in paying this alimony.

It is also the claim of the defendant, supported by his testimony and uncontradicted by any direct evidence, that the only property he has left is his homestead, worth about $4,500; his household furniture, worth about $400 or $500, and from $1,200 to $1,500 invested in tax titles. It further appeared at the hearing of his petition in this case that his annual income amounted to from $1,600 to $1,800 a year, derived from his salary as supervisor and assistant city assessor, his tax business, and the rental of rooms in his home. He is 49 years of age, and avers and testifies that he is in bad health and that his physical troubles are such as will require an operation. His present wife had, when he married her, between $500 and $600 invested in real estate. She sold this real estate and re-invested the proceeds in other real estate. It is the claim of the defendant that by means of investments his present wife now has an equity of $2,000 or $3,000 in a two-story building, with stores on the ground floor and living apartments above, on North Saginaw street in the city of Flint. It is his claim that this property was accumulated from investments from real estate that his present wife owned before she was married.

On the other hand, it is the claim of the plaintiff that the defendant has studiously attempted to place his property in the name of his second wife for the purpose of defrauding the plaintiff and depriving her of her alimony. There is testimony pro and con upon the subject, but there is no direct testimony to support the claim of the plaintiff upon this subject.

In July, 1918, the plaintiff filed a petition setting up many of the foregoing facts, and prayed the court for an order to be directed to said defendant commanding him to show cause why he should not be punished for contempt of court in failing to obey the decree of the court; which order was duly made.

Defendant filed an answer, and a counter-petition alleging changed conditions; that he had met with financial reverses, and that because thereof, and because of poor health, he should be relieved from such payments, and prayed the court to revise said decree and determine what amount, if any, was due from him to the plaintiff. Plaintiff filed an answer to the counter-petition denying the allegations therein contained. Upon the hearing the contempt proceedings were not pressed, and the court dismissed the counter-petition and held that the defendant should pay plaintiff the amount then due, and ratified and affirmed the decree entered therein.

From the opinion of the court, which is a part of the record, it is stated that if the court were taking up the question *de novo*, it would not feel that it should grant $100 a month for the period of the plaintiff's life, but expressed some doubt as to its having authority to modify or change the decree because of the agreement of the parties incorporated in it.

The statute (3 Comp. Laws 1915, § 11417), provides that after a decree for alimony or other allowance for the wife and children, or either of them, the court may, from time to time, on the petition of

either of the parties, revise and alter such decree, respecting the amount of such alimony or allowance and the payment thereof, and may make any decree respecting any of the said matters which such court might have made in the original suit. Jurisdiction of the court to revise such decree is affirmed in *Camp v. Camp*, 158 Mich. 221, and in *Aldrich* v. *Aldrich*, 166 Mich. 248, in each of which cases an agreement of the parties with respect to alimony was approved by the court and embraced in the decree. See, also, *Meyers* v. *Meyers*, 161 Mich. 487; *Kelly* v. *Kelly*, 194 Mich. 94; *Gittings* v. *Gittings*, 197 Mich. 446. We lay no stress upon the fact that the decree in this case was based upon the property settlement entered into by the parties, and embraced in the decree. In *Camp* v. *Camp, supra*, this court, speaking through Justice GRANT, said:

"The statute authorizes courts of chancery to at any time, on the petition of either party, revise and alter the decree as to alimony or allowance for the support of minor children. The learned circuit judge held that the only remedy for the defendant was by direct proceeding to set aside the contract of settlement. In this, we think he was in error. It is immaterial whether the decree for alimony and the support of children is incorporated in the decree by the consent of the parties, or by a determination of the court. When once incorporated in the decree, the court obtains jurisdiction to revise it at any time thereafter. The sole question, therefore, is whether the defendant by his petition and evidence has made a case entitling him to any modification."

See, also, similar language of Justice OSTRANDER in *Kelly* v. *Kelly, supra*.

So we are brought to the meritorious question: Has the defendant's financial condition changed since the date of the decree to such an extent as to justify us in modifying the decree. We have read the evidence

with a good deal of care, and it seems to us that the changed financial condition of the defendant is such as to render it impossible for him to pay the plaintiff $100 a month without depleting and, in the end, entirely exhausting what little property he has left. We are satisfied that his annual income is much smaller than it was when the agreement and decree were made. With due regard to the equities in the case, it seems to us that the monthly payments in the future should be reduced to $75. He has since January 1, 1916, paid but $50 a month.

The order of the court will be reversed, and the decree below will be so modified here as to require the defendant to pay, at once, the remaining $25 a month from January 1, 1916, to the present time in a lump sum, and to continue to pay $75 a month instead of $100, in accordance with the terms of the decree. No costs will be awarded to either party.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.