# LEWIS *v.* LEWIS

No. 2932

September 5, 1931. 2 P. (2d) 131.

(SAN-DERS, J., dissenting.)

*P. A. McCarran,* for Appellant:

*Green & Lunsford,* for Respondent:

## OPINION

By the Court, GUILD, District Judge:

This is an appeal from an order made and entered on the 30th day of January, A. D. 1930, modifying and amending the judgment and decree of divorce of the respective parties made and entered in the district court of Washoe County on the 16th day of April, 1928.

The appellant here was the plaintiff in the court below, and the respondent was the defendant in the court below. The parties will be referred to as plaintiff and defendant.

Previous to the granting of the decree, and during the pendency of the divorce action, plaintiff and defendant, upon March 15, 1928, entered into a written property settlement agreement, a portion of the language of which is as follows:

"Third: The parties hereto shall, on the execution of this agreement transfer, assign and set over to the Guaranty Trust Company of the City of New York as trustee certain securities, representing part of the earnings and savings of the party of the first part and having a present market value of at least fifty thousand (50,000) dollars, the names and amounts of said securities being set forth in a schedule hereto annexed and made part hereof. Said trust company shall hold said securities under a trust deed to be executed by it and the parties hereto, and to be made a part of this agreement. The substance of the trust is as follows:

"The trustee is to receive, hold, manage, sell, invest and reinvest the trust fund and every part thereof, and to collect, recover and receive the issues, interest and income thereof, and after deducing its lawful commissions and disbursements, to pay the issues, interest and

income to the party of the second part for the use and benefit and for the support, education and care of Wells Lewis until he shall attain the age of twenty-five (25) years; after the said Wells shall attain the age of twenty-five (25) years, or should he die prior to that time then upon his death the said trustee shall pay the issues, interest and income to the party of the second part for her own use for the term of her natural life and whether or not she may remarry.

"Upon the death of the party of the second part after the said Wells Lewis shall have attained the age of twenty-five (25) years, or upon the death of the party of the second part and of Wells Lewis before he shall have attained the age of twenty-five (25) years, the trust hereby created shall forthwith cease and determine, and the trustee shall transfer, assign, pay over and deliver the principal thereof unto the party of the first part or his executors, administrators or assigns. Upon the death of the party of the second part before Wells reaches the age of twenty-five (25) years, then the trust company itself shall apply the income for the support, education and maintenance of Wells until he attains the age of twenty-five years.

"The details for carrying out the trust will be set forth in the separate trust deed or agreement hereinbefore referred to. The trustee is to have sole control of the fund and of the character of the investments to be made thereunder, subject, however, to the approval of the party of the second part.

"Fourth: The party of the first part has already given to the party of the second part toward her support and maintenance the sum of Fifty thousand (50,000) dollars in cash and securities, the receipt whereof she hereby acknowledges.

"Fifth: The party of the first part further agrees to continue to pay to the party of the second part while the parties remain alive the sum of one thousand (1,000) dollars monthly or twelve thousand (12,000) dollars annually. In the event of the remarriage of the party of the

second part this obligation shall forthwith cease and the party of the first part shall no longer be obligated to make any further payments.

"It is understood and agreed, however, that the foregoing payments are based on an average gross annual income of the party of the first part of forty-eight thousand (48,000) dollars, and that should at any future time said gross annual income fall below forty-eight thousand (48,000) dollars the party of the first part shall have the right to apply to the court for a reduction in the payment of alimony to a sum equal to one-fourth of the then gross annual income of the party of the first part, such payments to continue as reduced until his gross annual income shall again reach forty-eight thousand (48,000) dollars or more. In no event, however, shall the present allowance of one thousand (1,000) dollars a month to the party of the second part be increased."

The decree went to the plaintiff in the court below, and the court in its findings, among other things, found:

"That there is no community property belonging to the plaintiff and the defendant to be divided by the court, but that the said parties have entered into an agreement under date of March 15, 1928, wherein the plaintiff is awarded full custody of the said child with certain rights of visitation being reserved unto the defendant.

"The court further finds that under said agreement a trust fund of Fifty Thousand Dollars has been established with the Guaranty Trust Company of New York City, the income of which shall be applied to the care, support and maintenance of the said child, Wells, until he reaches the age of twenty-five years, or in the event of the death of the said child, Wells, the income from said trust fund shall be paid to the plaintiff during her natural life.

"That said agreement further provides that the defendant will pay to the plaintiff the sum of One Thousand Dollars a month on the first day of each and every month so long as the plaintiff shall not remarry; but that should

the income of the defendant at any time fall below the sum of Forty-eight Thousand Dollars a year, the defendant will have the right to apply for a reduction of said monthly alimony to a sum equal to one-fourth of his annual income.

"The Court further finds that said agreement is for the best interests of the said child and makes reasonable provision for the support of the plaintiff and of the said child, Wells Lewis."

"That the said agreement entered into between the plaintiff and the defendant under date of March 15, 1928, be, and the same is hereby ratified and confirmed and made a part of the decree of this court; that the plaintiff is hereby awarded custody of the said child, Wells Lewis, as provided in said agreement, with all reasonable rights of visitation being reserved unto the defendant, and that the defendant shall have the right to have said child, Wells Lewis, visit him at such time as may be mutually agreeable to both parties;

"It is further ordered that the defendant make the payments provided for in said agreement, to-wit:

"That the income of the trust fund of Fifty Thousand Dollars ($50,000.) established with the Guaranty Trust Company of New York City, shall be paid to the plaintiff to be applied to the care, support and maintenance of the said child, Wells Lewis, until he reaches the age of twenty-five (25) years, or in the event of the death of the said child, Wells Lewis, the income from said trust fund shall be paid to the plaintiff during her natural life.

"That the defendant pay to the plaintiff the sum of One Thousand Dollars ($1,000.) a month on the first day of each and every month so long as the plaintiff shall not remarry, and provided that the income of the defendant is at least Forty-eight Thousand Dollars ($48,000.) per year, but if the income of the defendant shall fall below the sum of Forty-eight Thousand Dollars ($48,000) per year the defendant shall have the right to apply to the court for a decrease in the alimony hereinabove provided

to be paid to the plaintiff, to an amount equal to one quarter of the defendant's said income.

"The Court reserving unto itself the right to make such further or additional orders relative to the payments to be made to the plaintiff for her support, and to the custody and control of the said child or to the support of said child, as the court may in the future deem proper."

On January 13, 1930, the defendant made application to the court below and filed a motion to amend the judgment and decree of divorce as originally entered by striking therefrom the following language contained in the judgment and decree, to wit: "That the defendant pay to the plaintiff the sum of One Thousand Dollars ($1,000) a month on the first day of each and every month so long as the plaintiff shall not remarry, and provided that the income of the defendant is at least Forty-eight Thousand Dollars ($48,000.) per year, but if the income of the defendant shall fall below the sum of Forty-eight Thousand Dollars ($48,000) per year the defendant shall have the right to apply to the court for a decrease in the alimony hereinabove provided to be paid to the plaintiff, to an amount equal to one quarter of the defendant's said income;" and to substitute therefor the following language: "That the defendant pay to the plaintiff annually an amount equal to one-fourth of defendant's gross annual income from all sources, on a basis of not to exceed Forty-eight Thousand Dollars ($48,000.00) as defendant's gross annual income, the said amounts to be payable as follows: $200.00, on account, on the first day of each and every month beginning with January 1st, 1930, and continuing at said rate monthly thereafter, and the balance, if any, payable not later than the 10th day of January, 1931, and on the 10th day of January of each and every subsequent year thereafter, at which time the said defendant shall pay to the plaintiff in addition, any sum in excess of $2,400.00 that shall equal one - fourth of defendant's gross annual income for the year just past, between Nine Thousand Six Hundred Dollars

($9,600.00) and Forty - eight Thousand Dollars ($48,-000.00) as the minimum and maximum basis of his said gross annual income; said payments shall continue in the manner aforesaid until the plaintiff shall remarry, if ever."

Among the reasons given in the petition and motion for an order modifying the decree are the following: That the original decree and the terms thereof are indefinite and uncertain, varying in amounts of $9,600 or less to $48,000. It is impossible for the defendant in advance to know or even approximate what the amount of his gross annual income will be for any one year, and with the decree in its present form he is required to pay to the plaintiff the sum of $1,000 per month, regardless of the actual amount of his said income, and then to look to the plaintiff for a refund, return, or reimbursement if the payments made exceeded one - fourth of the defendant's gross annual income; that the annual income of the defendant has been greatly diminished; and that the approximate income of the defendant for the year 1930 will not exceed $9,600.

To the petition and motion asking for a modification of the decree the plaintiff filed a demurrer and certain objections setting forth that the court had no jurisdiction over the subject-matter of the motion; that the same was made without proper or any service, and that the service made was contrary to the order and direction of the court; that the motion is not based upon fact but upon mere conjecture; that the same was not made within the time provided by law; that the same was premature; and that it is not shown by the affidavits that there is any actual falling off of the income of the defendant, and no change is shown in the conditions of the defendant as they existed at the time of the making of the property agreement and settlement, or as they existed at the time of the making and entry of the divorce decree; that the decree is based upon an agreement mentioned in the decree; and that the agreement does not base the $1,000 monthly payments to be made

by defendant to plaintiff upon his income for one single year, but based it upon his average annual income.

The motion was duly noticed for hearing, the plaintiff served with a copy of said notice, thereafter an extensive hearing was had, certain affidavits of plaintiff and various witnesses, the affidavit of the defendant and the oral testimony of the defendant, and the counter affidavits were submitted to the court. The lower court, on the 30th of January, 1930, made and entered its order modifying the original judgment and decree of divorce as prayed for in the motion and in the manner hereinbefore related, to the effect that the defendant pay to plaintiff the sum of $200 per month on the first day of each and every month beginning February 1, 1930, on account, and that not later than the 10th day of January of each and every subsequent year thereafter the defendant pay to the plaintiff such additional sum in excess of $2,400 that shall equal one-fourth of the defendant's gross annual income for the year just past, between $9,600 and $48,000 as the minimum and maximum basis of said gross annual income, the court again reserving unto itself "the right to make such further or additional orders relative to the payments to be made to the plaintiff for her support and to the custody and control of said child or the support of said child as the Court may in the future deem proper."

In proper time an appeal was taken from the order of the trial court made and entered as above.

In support of the appeal, the plaintiff contends, first, that it was beyond the authority of the trial court to modify the provisions of the original decree; second, the alimony and support granted by the decree was one based on contract between the parties, and was therefore without the power of the court to modify or change by way of motion; third, the order appealed from is an order in violation of the express terms of the executed agreement of the parties adopted by the court in its findings and decree; fourth, the order appealed from is an order in violation of the express language of the

decree; fifth, the modification asked for in the motion and granted in the order appealed from is one of substance and not of form; sixth, in the original decree the court did not reserve the right to make the change in the award of alimony; seventh, it is a change in the contract rather than a change in the decree that is sought by defendant.

■ Was the trial court without authority to modify the provisions of the original decree? Without again repeating the language of the decree in the court below, and as hereinabove set forth, the court reserved unto itself the right to make such further or additional orders, not only relative to the payments to be made to the plaintiff, but also the custody and control of the child or the support of the child as the court may in the future deem proper. The plaintiff submits to this court as authority for her contention above recited the case of Sweeney v. Sweeney as found in 42 Nev. at page 431, 179 P. 638, 639. It is our opinion that the above case is the authority, or one of the authorities, for the trial court to have assumed jurisdiction over the motion, and to have, after a hearing, granted the same. This court held in the Sweeney Case, in effect, that: "There can be no change in the award of alimony, unless the right to make such a change is reserved by the court in its decree, as it may be, or is given by statute, as it often is." Again, in the case of Dechert v. Dechert, 46 Nev. 140, 205 P. 593, this court said: "The decree of divorce provides that it may be modified as to the allowance mentioned, and hence the court would have authority to modify it upon a proper showing."

While we have not heretofore ruled upon this identical question, yet this court has established the precedent by implication that, if the right is reserved by the trial court to make additional or further orders, or to modify its findings and decree with reference to custody and control of minor children, and the support of said children, and also alimony payments, and if a proper showing is made, the trial court has ample power and

authority to modify and amend its decree in divorce cases in the foregoing respects. The great weight of authority seems to be in accord with this viewpoint, as is pointed out, discussed, and analyzed in the case of Ruge v. Ruge, 97 Wash. 51, 165 P. 1063, L. R. A. 1917F, 721. We quote with approval extracts from the above case. In this case the court in its opinion makes a careful analysis and distinction between various cases; each class being based upon a sound fundamental principle.

One of the classifications pointed out by the learned judge in the above case is in the following language: "IV. Comprising this class are the cases where the court by express provisions in its decree reserves to itself either all or a portion of its power to provide alimony for the wife or maintenance for the children. In such cases the decree is not final and conclusive as a matter of law, because it does not purport to be final and conclusive as a matter of fact. The reservation in the decree plainly indicates an unfinished determination of the judicial mind; that is, the court has not completely disposed of the case. The power of the court not having been exhausted, it reserves to itself the right to exercise the unexhausted portion of its power in such manner as changed conditions and circumstances may indicate to be just. As a judgment in any kind of action thus inconclusive and incomplete is not final, so also it is not final in a decree relating to alimony. The cases are in harmony that, where the power to modify is thus expressly reserved in the decree, the tribunal reserving it has the power to exercise it to meet changed or changing conditions thereafter arising." Ruge v. Ruge, 97 Wash. 51, 165 P. 1063, 1065, L. R. A. 1917F, 721.

Says Mr. Bishop in his treatise on Marriage, Divorce, and Separation: "Because the procedure of a court always bends with the right to which it gives effect, it early became and it remains the doctrine in the country whence our laws are derived, and it is accepted and practiced upon by a considerable proportion of our American tribunals that the court may at any time

and from time to time, on any change in the circumstances of the parties, increase or reduce the sum allotted for alimony temporary or permanent."

We feel that the authority handed us by the plaintiff in the case of Daniels v. Daniels, 12 Nev. 118; Jones v. San Francisco Sulphur Co., 14 Nev. 172; and Clark v. Strouse, 11 Nev. 79, are not cases applicable or analogous to the situation or the facts or circumstances here presented.

This matter is very extensively portrayed by the learned author of Corpus Juris as found in 19 C. J. p. 270: "Where the court has preserved its jurisdiction by a reservation in the final decree, it may modify the amount awarded, notwithstanding the reservation was to the wife alone."

It will thus be seen that the rule is sufficiently broad to bring the present case within its purview, and where in states like Nevada we have a statute limiting the time for modifying a court decree, the rule does not apply to actions of this kind where jurisdiction to modify is reserved in the original decree of the lower court.

But here, also, by the very language of the agreement itself, the parties, plaintiff and defendant, contemplated that such a condition might arise wherein it would become necessary to ask for a modification of the decree. We quote from the agreement and decree the following language: "And that should at any future time said gross annual income fall below forty-eight thousand (48,000.00) dollars the party of the first part shall have the right to apply to the court for a reduction in the payment of alimony."

In the case of Lindsay v. Lindsay, cited by plaintiff, 52 Nev. 26, 280 P. 95, 67 A. L. R. 824, this court held in effect that, "where order of court altered decree for divorce in substantial way by reducing amount which defendant husband was required to pay wife for support and maintenance of minor children, changes were unauthorized under Rule 45 of District Court, requiring notice to adverse party within six months. * * *"

It would appear from a perusal of this case and of the court's review of the decree of the trial court that jurisdiction was not retained in the original decree as in the present case.

What was said in the Lindsay Case has no specific application to the facts and the law applicable here.

It will be seen from an examination of our statutes, sections 9463, 9465, Nev. Comp. Laws 1929, that the trial court has a right conferred upon it to make such property settlements as may seem just and equitable. It will be seen further that the court may, on proper showing for cause, enter an order changing the payment of alimony to the minor children. Can it then be said that, if an application in such instance was made, rule 45 of the district court rules of the state would not permit the entering or the granting of an order by the trial court making such change in the payment of alimony as is permitted by the foregoing sections of our statute? We think not. The statute is an enactment of the legislature. The rule is one made by a court by permission of a statute. The constitution of the State of Nevada, art. 6, sec. 6, and the various statutes of the State of Nevada relating to marriage and divorce, have permitted, in our opinion, the district court to reserve jurisdiction in matters of this kind, and, when the jurisdiction has been thus retained, it would be an infringement for this court to make a rule for the district courts in conflict with the constitution and the statute; and, indeed, the very statute permitting the supreme court to make rules for the district court expressly provides that the rules so made shall not be inconsistent with the constitution and laws of the state.

However, we do not believe there is a conflict here or that the Lindsay Case, above quoted, applies for the reasons above set forth.

And, further, there are many kinds of judgments, and the reason for rule 45 of the district court is obvious where it concerns judgments of a trial court which, by

reason of their very nature, should not be subjected to modification or change, but decrees or judgments concerning the custody of minor children and the award of alimony in divorce cases, particularly where jurisdiction is reserved, do not fall within that class of judgments where rule 45 is meant to apply.

Can it be said that an agreement of separation entered into between parties, and afterwards found by a trial court to make ample provisions for the plaintiff and the minor child, can cut off or impair or infringe upon the power of the trial court to subsequently alter it, providing the trial court has reserved unto itself jurisdiction for such purpose? I am of the opinion that it cannot. The statute of our state gives the trial court authority and power to make provision for the maintenance, support, and education of minor children, and provides for the allowance of alimony in divorce actions. Sections 9463, 9465, Nev. Comp. Laws 1929.

■ It is our opinion that the trial court in no instance is bound by the written agreement of the parties to a divorce action. It may or it may not adopt, according to its judgment, wisdom, and discretion, such written agreement if it deems the same to satisfactorily care for the interests of the respective parties to the action and the minor children, if any. It is not bound to do so, however, and may, in its discretion, cast aside and refuse to adopt any such agreement which the parties might have, with the utmost good faith, entered into. The mere fact that the trial court does occasionally, and perhaps in most instances, adopt as a part of its findings and decree an agreement which the respective parties might have entered into settling and adjusting their property rights and differences, and even payments of alimony, does not, of itself, signify that it cannot, if it so desires, adopt its own.

The trial court is not bound in the first instance by any agreement made between parties concerning the amount of alimony to be allowed a wife or the support or maintenance money for the wife or minor children.

A trial court may, in its wisdom and discretion, adopt as a part of its findings and decree and judgment an agreement made and entered into between the respective parties concerning this most important matter (or it may ignore such agreement), if the court in its judgment and discretion deems that the agreement properly protects the rights of the respective parties and appears to the court to be fair.

There is a vast difference, too, in agreements entered into with reference to the fixing of an amount of alimony and agreements entered into with respect to the maintenance and education of minor children, but in the instant case the very parties themselves contemplated that a change might be made necessary in the future. The very nature of the vocation of the defendant would contemplate such a change, and, the court having retained jurisdiction to modify its decree, and the agreement itself being merged in the decree and having been adopted by the court, we can see no real serious merit to the plaintiff's contention that the trial court had no power or authority to modify or change the decree because the same was based upon contract between the respective parties.

"It is immaterial whether the decree for alimony and the support of children is incorporated in the decree by the consent of the parties, or by a determination of the court. When once incorporated in the decree, the court obtains jurisdiction to revise it at any time thereafter." Skinner v. Skinner, 205 Mich. 243, 171 N. W. 383, 385.

The above citation is from a state which has a statute making provision for a court from time to time revising and altering divorce decrees, etc. A like and similar situation seems to exist in the State of Illinois where, in an action for divorce, an agreement of the parties was incorporated in the decree of the court, and the supreme court of that state said: "If the decree was entered, the rights of the parties rested upon it and not upon the agreements." Herrick v. Herrick, 319 Ill. 146, 149 N. E. 820, 824.

In the instant case the parties to the agreement contemplated the change from time to time in the earning capacity of the plaintiff, and in the amount to be paid by the defendant, and, as above indicated and pointed out, the court reserved expressly the right to make any necessary modifications upon a proper showing had, and retained unto itself jurisdiction for such purpose.

A very interesting discourse upon this important matter is had in the supreme court of Minnesota in the case of Warren v. Warren, as found in 116 Minn. 458, 133 N. W. 1009, and in this case the theory is advanced and adopted that stipulations and agreements entered into between parties to a divorce action pending the action became merged in the judgment when entered, and are not, in the absence of statute upon the subject, sufficiently of a contractual nature as to preclude the court subsequently from changing and modifying the judgment upon application of one of the parties.

As we have above pointed out, the court is not controlled or obligated by the stipulation of the parties, and may adopt or reject or modify such a stipulation or agreement to suit its own version of the entire case as made upon the facts presented.

Massachusetts, New York, Minnesota, Illinois, and the courts of many, many other states have adopted the broad and reasonable rule that the court may modify its decrees, irrespective of the fact that it might have adopted an agreement and property settlement of the respective parties entered into prior to and pending the divorce action. Wilson v. Caswell (Mass. 1930), 172 N. E. 251; Stewart v. Stewart, 198 App. Div. 337, 190 N. Y. S. 369.

It is the contention of the appellant that the order appealed from is an order in violation of the express terms of the executed agreement of the parties adopted by the court in its findings and decree. It will be noted that the agreement in question uses the word "average" with reference to the husband's gross annual income, and we think, if there is no other reason than this use

of the word "average," without enlarging upon the same or making provision as to what years might be averaged or how many, that, in fairness to each of the parties, the court should have granted the motion to modify the original decree. We ask ourselves the questions: The average of what? What average? For how long a period? When must the average be made, and how? Could the average be made in one year so as to exclude certain earnings of the year following, or what particular year would be taken as an average of the gross annual income of the defendant in the action? Fortunately for the respective parties, the words "average gross income" are contained only in the fifth paragraph of the agreement, and the meaning of the same might be enlarged upon by reading the next paragraph in the agreement which leaves out the word "average." To accept the plaintiff's viewpoint, we would have to average the income over a definite period of time. It is not suggested for how many years or how long a period the average should be figured upon. It must be conceded that the parties to the agreement understood the terms thereof and that the sixth paragraph clarifies the entire situation.

In fact, from a reading of the agreement between the plaintiff and the defendant, we are led to believe that the parties contemplated that a condition of some kind would arise whereby it would become necessary to apply to the court for a modification of the judgment. The agreement so states, and we see no cause to again repeat that portion of the same with reference to this matter.

Was the order modifying the decree prematurely made? The contention of the appellant is that the time for making the application for the order of modification, if the court had jurisdiction, was at the end of the year 1930, or at a time when the defendant could show the court that the income for the then previous year had fallen below the sum of $48,000, and not at a time when the defendant could only contemplate what his earnings would be for the forthcoming year of 1930.

The testimony upon this matter was before the trial court. The oral testimony of the defendant, supported by the affidavit of his publishers, clearly shows that the earnings of the much talked about author of "Main Street," "Elmer Gantry," and "Babbit," to say nothing of the winner of the Nobel Prize, were carefully computed by his publishers and his bankers to be far less than the contemplated sum of $48,000. This matter was before the trial court upon the evidence, and the court, after hearing the same, reached a decision from said evidence. It may be said in passing that the original agreement and the decree in the case gave the parties no authority, nor did it vest the defendant with any right, to make application from the plaintiff for a refund if his earnings had fallen below $48,000 per year and he had continued his payments of $1,000 per month. It must be conceded that the modification as entered by the lower court is one that can easily be understood, because there is no ambiguity, and the rights of the plaintiff are amply or fully protected, in that the defendant must, within a given period after the end of each year, submit an accounting to the plaintiff of his earnings for the then previous year, and, should the gross earnings be more than $9,600 per annum, the plaintiff is to receive one-fourth of all such additional gross earnings, in addition to the $200 paid her on the first of each month by the defendant.

The trial court heard all of the evidence between the respective parties. The affidavits are very lengthy, and the oral testimony of the defendant is in detail as to his finances and earning capacity. The plaintiff, who is the author of "Half a Loaf" and other modern fiction, had the same opportunity and right to appear in the trial court and testify orally before the judge. However, she chose to submit her proof by affidavit. Her affidavit is very enlightening, and quite fully covers her objections to the modification of the decree. The same is substantiated in part by affidavits of other witnesses. However, the trial court was the judge of the testimony,

and, where there is substantial testimony to justify the conclusions reached by the trial court, this court is bound to accept the same, and will not disturb the trial court's findings. Black v. Black, 48 Nev. 220, 228 P. 889; Duplantis v. Duplantis, 50 Nev. 234, 255 P. 1014.

The plaintiff to the action was present at the time of the granting of the decree and testified in the case. The defendant was then sojourning in Italy, at Naples, in which country he executed the written agreement, and it was transmitted to the plaintiff and by her counsel asked to be incorporated in the findings in the action, and by her accepted in the court's decree. Certainly it cannot now be said that the plaintiff was not cognizant of the terms of the agreement; namely, should the income of the defendant at any time fall below the sum of $48,000 per year, the defendant will have the right to apply for a reduction of said monthly alimony to a sum equal to one-quarter of his annual income.

If the facts upon which the motion was based were within the knowledge of the moving party, as in the instant case, we do not think the motion was premature.

It is in testimony that at the time of the divorce, or previous thereto, and the agreement and property settlement made and entered into between the plaintiff and defendant during the pendency of the divorce action, the defendant set aside the sum of $50,000 to the plaintiff herein. It may be true, as related in the plaintiff's brief on appeal, that this was a division in part of the earnings of the community interests during the period of their marital life. It is safe to assume that, from whatever source the same was provided or earned, the fact remains that the plaintiff in the action had previously had said sum set aside to her for her use over and above and in addition to the monthly payments mentioned in the court's decree.

What we have said disposes of all contentions of the plaintiff.

The district court having reserved jurisdiction for the purposes mentioned in the motion, and no error

appearing in the record, and the evidence before us being ample to support the order of the district court modifying the decree, it follows that the order appealed from should be affirmed.

It is so ordered.

COLEMAN, C. J., concurring:

I concur in the order of affirmance, but not with all that is said in the foregoing opinion.

The appellant assigned six errors; the first four in effect challenging the power of the court to modify the decree. The fifth assignment is to the effect that the decree did not reserve the right to make a change in the award of alimony, and the sixth is that the modification is a change in the agreement and not in the decree.

The original complaint in the case does not plead the agreement, but does plead according to its legal effect, as interpreted by the plaintiff, the paragraph of the agreement pertaining to the monthly payments to be made by the defendant to the plaintiff, in words and figures as follows: "Said agreement further provides that the defendant will pay the plaintiff the sum of One Thousand ($1,000.) Dollars a month on the first day of each and every month so long as the plaintiff shall not remarry; it being understood, however, that should the income of the defendant at any time fall below the sum of Forty-eight Thousand ($48,000.) Dollars per year, the defendant will have the right to apply for a reduction of said monthly alimony to a sum equal to one-fourth of his annual income."

The court in its decree followed the interpretation of the plaintiff of the paragraph mentioned.

It is clear that the court had the power to modify the decree.

There is no merit in assignment 6. The court's order of modification did not change the terms of the contract.

SANDERS, J., dissenting:

I dissent. The manner of vacating or setting aside

judgments in this state is regulated by statute, which must be complied with in order to authorize the court to act. Our attention has not been called to any provisions of the civil practice act that authorizes the court to set aside the judgment in a case like this upon a mere motion. The case does not come within any of the provisions of section 142 of the civil practice act (section 8640, Nev. Comp. Laws 1929, section 5084, Rev. Laws 1912).

The defendant, however, based his right to maintain his motion upon the power reserved to the court in its original decree to make such further or additional orders relative to the payments for the plaintiff's support. This being so, under our divorce statute, section 27, section 9465, Nev. Comp. Laws 1929, it was the duty of the court to allow such sum for the wife's support as was just and equitable under the circumstances of the case and the surroundings of the parties.

It is held that, in the absence of fraud or collusion, an agreement or arrangement between the parties entered into before, and not for the purpose of facilitating the granting of a divorce, may be adopted by the court in granting permanent alimony, if such an agreement is just and equitable, but the court is not bound by the agreement and may disregard it, especially where it is unfair and inequitable, or the amount is inadequate. 19 C. J. p. 251, sec. 586. There is nothing in our statute giving jurisdiction to incorporate into the judgment such agreements. They are, however, sometimes included in the judgment if they appear fair, rendering it unnecessary to take proof. The parties, by their agreement, decided to submit to the court the questions of the reduction of the payments required for the wife's support, in case the defendant's gross annual income fell below that of $48,000 per year, in which event the wife agreed to accept a sum equal to one-fourth of his annual income. The court, upon motion, struck this provision from the judgment. I am of opinion that, when the defendant elected to move the court to make a new arrangement

between the parties as to the payments for the wife's support of $1,000 per month, so as to conform to his reduced gross annual income, the court was not bound by the agreement of the parties. Under the power reserved to it in its original decree to make such further or additional orders relative to the payments as the court in the future might deem proper, its jurisdiction was limited to make such an allowance for the wife's support as was just and equitable under the circumstances of the case and the surroundings of the parties. As a result of the defendant's motion, the court assumed jurisdiction to take hold of one of the provisions of the agreement of the parties and make an order which, in my opinion, is so manifestly unjust and unfair to the plaintiff wife that it should not be sustained.

We know of no principle, and we have been cited to no authority, which authorized the court, under the facts and circumstances as disclosed by this record, to so arrange the payments for the support of the wife as to make it possible for the defendant, by deliberate intent, disinclination, or otherwise, to defeat or avoid his marital obligation of support of the plaintiff.

DUCKER, J., being unable to participate by reason of illness, the Governor designated Hon. CLARK J. GUILD, Judge of the First Judicial District, to act in his stead.