## FLEMING v. YOKE.

### Civ. No. 31–F.

District Court, N. D. West Virginia.

Jan. 11, 1944.

Tusca Morris, of Fairmont, W. Va., and Elden McFarland, of Washington, D. C. (Ike Lanier, of Cincinnati, Ohio, on the brief), for plaintiff.

Joe V. Gibson, U. S. Atty., of Kingwood, W. Va., C. Brooks Deveny, Asst. U. S. Atty., of Fairmont, W. Va., John W. Fisher, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe, Sp. Asst. to Atty. Gen., on the brief), for defendant.

HARRY E. WATKINS, District Judge.

Where decedent and his wife entered into a separation agreement whereby decedent agreed to pay his wife $8,000 per year during her life or until her remarriage, in which event such payments should be reduced to $4,000, and such agreement was thereafter approved and adopted by a Nevada court in a decree of divorce, was the wife's claim against the decedent's estate for such payments an allowable deduction in computing the estate tax under Section 303(a) and (d) of the Revenue Act of 1926, as amended, 26 U.S.C.A. Int. Rev.Acts, pages 232, 240? This is the only issue in this action by the taxpayer

as executor of the estate of George W. Fleming, deceased, to recover estate taxes paid by him. Both plaintiff and defendant have moved for summary judgment upon the pleadings and affidavits filed by the plaintiff.

There is no dispute as to the facts. George W. Fleming died December 25, 1935, a resident of Fairmont, W. Va. On July 8, 1930, the decedent and his then wife, Doris Underhill Fleming, having separated, entered into a separation agreement whereby decedent agreed to pay Doris Underhill Fleming "for her support, maintenance and other proper purposes, and in full satisfaction of and for all her rights and estates in the property now owned by and which may hereafter be acquired by" the decedent, the sum of $8,000 per year during her life or until she should again marry, in which event the payments were to be reduced to $4,000 per year. She accepted the agreement and the provisions therein made for her in full satisfaction and extinguishment of all her rights and estates in decedent's property. The decedent likewise released to her all claim, rights and estates of every character which he had to any separate property or estate owned by her. The agreement provided that decedent should secure the payment of the yearly sums by placing a sufficient amount of bank stock in trust in the National Bank of Fairmont to secure the payment of the sums agreed upon.

Subsequently, on July 31, 1930, a final judgment and decree of divorce from the decedent was granted to Doris Underhill Fleming by a court of proper jurisdiction in the State of Nevada. The decree approved and adopted the agreement of July 8, 1930, by which the property and financial rights of the parties were settled and adjusted.

On December 25, 1935, the date of decedent's death, Doris Underhill Fleming was 59 years of age. She then had a life expectancy of 14.7 years. She had not remarried and because of her advanced age was not likely to remarry. The present worth on December 25, 1935, of decedent's obligation of making the payments provided by the judgment and decree was $79,008.90. Plaintiff claimed that sum should be allowed as a deduction in computing the gross estate of the decedent for estate tax purposes. Later Doris Underhill Fleming accepted an annuity policy in lieu of all claims against the estate. The parties to this action have eliminated any question as to the amount of money involved by filing a stipulation as to such amount. That stipulation provides that "in the event the court should decide that judgment * * * should be entered in favor of plaintiff, the amount of such judgment should be * * * $8,552.04, together with interest thereon from July 16, 1938, according to law". Such stipulation, being an agreement as to the amount in dispute, is made without prejudice to the right of either party to contest the judgment on the merits.

Decision of this case requires a construction of Section 303(a) (1) and (d) of the Revenue Act of 1926, as amended by Sections 804 and 805 of the Revenue Act of 1932, and as further amended by Section 403(a) of the Revenue Act of 1934, which is set out in the margin [1], in so far as applicable to the facts of this case.

Plaintiff claims that the right of deduction is specifically granted by Section 303 (a) (1) of the Revenue Act of 1926, as a claim allowed by the laws of West Virginia where the estate is being administered; that the claim is not founded upon a promise or agreement, but upon a court judgment or decree, which judgment is

---

[1] "Sec. 303. For the purpose of the tax the value of the net estate shall be determined * * *

"(a) In the case of a citizen or resident of the United States, by deducting from the value of the gross estate— * * *

"(1) Such amounts * * *

"(C) for claims against the estate, * * *

"(E) * * * as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered * * *. The deduction herein allowed in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth. * * *

"(d) * * * For the purposes of this title, a relinquishment or promised relinquishment of dower, curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration in 'money or money's worth'."

founded upon an obligation imposed by law.

Defendant contends that the deduction was properly disallowed because the claim is founded upon a promise or agreement to pay alimony and, therefore, was not incurred for adequate and full consideration in money and money's worth within the meaning of the applicable statute quoted in the margin.

Such statute specifically allows deductions from the gross estate "(C) for claims against the estate, * * * as are allowed by the laws of the jurisdiction * * * under which the estate is being administered * * *." Clearly the claim in question was allowed by the laws of West Virginia, where the estate is being administered, and would be a deductible claim if there is no statutory limitation or exception applicable to the facts in this case. The limitation relied upon is as follows: "The deduction herein allowed in the case of claims against the estate * * * shall, *when founded upon a promise or agreement,* be limited to the extent that they were contracted bona fide for an adequate and full consideration in money or money's worth; * * *". (Italics supplied.)

■ This limitation is applicable only to claims "founded upon a promise or agreement." Therefore, the first and all important question to decide is whether this is a claim "founded upon a promise or agreement." If not so founded, the exception or limitation is not applicable to this case, and the claim should be allowed as a deduction from gross estate in calculating estate tax. I am convinced that the claim was not founded upon a promise or agreement, but was founded upon the judgment or decree of the Nevada court.

Similar cases have arisen many times, and in every instance where the specific question has been considered, the courts have reached a similar conclusion. Commissioner v. State Street Trust Co., 1 Cir., June 3, 1942, 128 F.2d 618, 142 A.L.R. 943; Estate of Grinnell v. Commissioner, 1941, 44 B.T.A. 1286; Young, Executrix, v. Commissioner, 1939, 39 B.T.A. 230; Ross et al., Executor, v. Commissioner, B.T.A. Docket 89895, 41 B.T.A. 1339 (Memorandum opinion, Jan. 16, 1940); Estate of Mason v. Commissioner, Feb. 28, 1941, 43 B.T.A. 813, appealed to Sixth Circuit and appeal dismissed with prejudice and without costs, by stipulation of parties.

The exact issue under consideration was considered by the court in each of the cases cited. In each case the husband and wife entered into a separation agreement, prior to, and in contemplation of a divorce. In each case the divorce court, upon granting the divorce, adopted the provisions of the separation agreement. In each case the taxpayer raised the point that the claim was founded upon the judgment or decree of the divorce court and not upon a promise or agreement. In each case the court was asked to interpret the identical statutory provisions involved here. In each case the court held that the obligation of the husband, and of his estate, was founded upon the decree of the court and not upon the prior agreement, and that the claim was a proper deduction from decedent's gross estate in calculating the estate tax.

Defendant contends that there should be no distinction between a claim based upon an agreement, and a claim based upon a judgment or decree adopting a previous agreement. In interpreting these statutes it is not for the courts to say what the law should be, but to determine what it is under existing statutes. This court is asked to interpret a statute, and is limited by the exact language contained therein. This point was clearly expressed in Commissioner v. State Street Trust Co., supra, wherein the court said [128 F.2d 621]: "It is true as the Commissioner contends that there is no difference between a divorce decree fixing the wife's marital rights and a separation agreement which provides a settlement in lieu of those rights insofar as the nature of what is given up is concerned. We cannot escape, however, the clear language of the statute. Certain it is that Congress may provide the answer to this seeming incongruity, but it is not for us to reach a result by judicial interpretation which would be contrary to the clear statement of the statute. See Commissioner of Internal Revenue v. Lyne, 1 Cir., 1937, 90 F.2d 745, 747, and cases cited. We, therefore, affirm the Board of Tax Appeals on this point."

■ In Nevada a divorce decree adopting and approving a previous agreement of the parties as to alimony or other expenses, rests on its own foundation, and does not take its legal efficacy or effect from the previous agreement. The prior agreement is merged in and superseded by the decree of the court. Lewis v. Lewis, 53 Nev. 398, 2 P.2d 131; Drespel v. Dres-

pel, 56 Nev. 368, 45 P.2d 792, 54 P.2d 226; Helvering v. Fuller, 310 U.S. 69, 60 S.Ct. 784, 84 L.Ed. 1082. The Nevada court could have disregarded the agreement of the parties and awarded such alimony as it deemed right. The claim for such alimony is predicated on the decree of the court and not upon the agreement of the parties. Young, Executrix, v. Commissioner, supra; Douglas v. Willcuts, 291 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391.

In the Young case the court said: "It would seem to follow that the claim which Katherine P. Young asserted against the decedent's estate rested immediately upon the judgment and decree of the Iowa court, which in turn was a judicial determination of the amount required from decedent to discharge an obligation imposed by law. Neither the obligation, nor the amount thereof, was created or determined by the agreement of the parties. The law imposed the one and the decree of court determined and adjudicated the other."

In Lewis v. Lewis, the Nevada case, the language of the divorce decree approving the previous agreement of the parties was almost identical with that used in the case at bar. The court said [53 Nev. 398, 2 P.2d 135]:

"It will be seen from an examination of our statutes, sections 9463, 9465, Nev.Comp. Laws 1929, that the trial court has a right conferred upon it to make such property settlements as may seem just and equitable.

\*    \*    \*    \*    \*

"It is our opinion that the trial court in no instance is bound by the written agreement of the parties to a divorce action. It may or it may not adopt, according to its judgment, wisdom, and discretion, such written agreement if it deems the same to satisfactorily care for the interests of the respective parties to the action and the minor children, if any. It is not bound to do so, however, and may, in its discretion, cast aside and refuse to adopt any such agreement which the parties might have, with the utmost good faith, entered into. The mere fact that the trial court does occasionally, and perhaps in most instances, adopt as a part of its findings and decree an agreement which the respective parties might have entered into settling and adjusting their property rights and differences, and even payments of alimony, does not, of itself, signify that it cannot, if it so desires, adopt its own.

\*    \*    \*    \*    \*

"A like and similar situation seems to exist in the state of Illinois where, in an action for divorce, an agreement of the parties was incorporated in the decree of the court, and the Supreme Court of that state said: 'If the decree was entered, the rights of the parties rested upon it and not upon the agreements.' Herrick v. Herrick, 319 Ill. 146, 149 N.E. 820, 824."

To the same effect see Maginnis v. Maginnis, 323 Ill. 113, 153 N.E. 654; Warren v. Warren, 116 Minn. 458, 133 N.W. 1009; Haskell v. Haskell, 116 Minn. 10, 132 N.W. 1129; Sessions v. Sessions, 178 Minn. 75, 226 N.W. 211, 701.

The Nevada divorce decree was effective and enforceable in West Virginia under the full faith and credit provision of the federal constitution (Art. 4, Sec. 1). Williams v. State of North Carolina, December 21, 1942, 317 U.S. 287, 63 S.Ct. 207, 210, 143 A.L.R. 1273.

Douglas v. Willcuts, supra, was a case where a prior agreement of the parties was adopted by the court in its divorce decree. The Supreme Court said (56 S. Ct. at page 62): "While the terms of the trust as set up in the trust agreement were approved, the court made those terms its own. It was from this action of the court that the trust derived its force."

It is reasonable to believe that in enacting the limitation in question Congress intended to prevent collusive agreements between spouses whereby a dower or curtesy interest, or similar statutory substitute therefor could be excluded from gross estate, thereby defeating Congressional intent to include such interest of a surviving spouse. For this reason it excluded as a deduction all claims based only upon agreements of spouses. Divorce decrees are not collusive but adversary in their nature. Such decrees do not subvert Congressional intent because the dower or curtesy interest of a spouse would not and could not survive the divorce, and, therefore, would never be included in gross estate under the statute in question.

After the entry of the divorce decree Doris Underhill Fleming was no longer a member of decedent's family. Thereafter the only relationship existing between them was that of a judgment cred-

itor and a judgment debtor. As such judgment creditor the law gave her the same rights to enforce her claim as it gave to all other creditors. Young, Executrix, v. Commissioner, supra.

Since the Nevada court could have changed the terms of the agreement, it is immaterial whether the decree for alimony is incorporated in the decree by the consent of the parties or by a determination of the court. Lewis v. Lewis, supra; Skinner v. Skinner, 205 Mich. 243, 171 N.W. 383.

Defendant cites Markwell's Estate v. Commissioner, 7 Cir., 112 F.2d 253; Weiser v. Commissioner, 39 B.T.A. 1144, affirmed on another point 10 Cir., 113 F.2d 486; and Meyer's Estate v. Commissioner, 2 Cir., 110 F.2d 367. It is true that in all of these cases there was an agreement followed by a divorce, but in none of them was the agreement adopted or incorporated in the decree of divorce. In each of these cases the claim for deduction was based solely upon the agreement, and not upon a judgment or decree. The divorce decree in no way entered into the decision of the court in disallowing the deduction. Consequently, the point relied upon by plaintiff here was not raised, and could not have been raised in any of the cases cited. In every case where the agreement was approved and adopted by a subsequent divorce decree, and this point was raised and considered by the court, the decision has been that the claim is based upon a court decree, and not upon an agreement, and, therefore, does not fall within the exception.

Likewise, in the case of Helvering v. United States Trust Co., 2 Cir., 1940, 111 F.2d 576, certiorari denied United States Trust Co. v. Commissioner, 311 U.S. 678, 61 S.Ct. 45, 85 L.Ed. 437, no reliance was placed upon the divorce decree, and the court did not consider the point here relied upon. These cases are distinguished by the court in Commissioner v. State Street Bank, 1942, supra, a case directly in point with our present case.

Another case cited by defendant is International Trust Co. v. United States, D. C.Colo., May 20, 1943. Since no opinion was written in that case, it is difficult to discuss it. If the effect of the divorce decree was material in that case, it apparently never was raised or considered by the court.

Defendant contends that "even if there had been no agreement or consent of the parties, and the rights of the wife had been first fixed by court decree", the claim would not be deductible; that the basic consideration for the payments was the relinquishment of marital rights which Congress has made insufficient. This position is in direct conflict with all reported cases, and squarely contrary to the statute itself which makes the limitation relative to relinquishment of marital rights effective only as to claims founded "upon a promise or agreement."

The deduction is allowable by reason of the specific provisions of the statute and all decided cases in point. Judgment may be entered accordingly against the defendant for $8,552.04, with interest thereon from July 16, 1938, according to law. Defendant's motion for summary judgment is denied.