[S. F. No. 17137.   In Bank.   Apr. 10, 1945.]

EDWARD W. BALLENTINE, Petitioner, v. SUPERIOR COURT OF SAN MATEO COUNTY et al., Respondents.

Paul A. McCarthy and Max H. Margolis for Petitioner.

Joseph J. Bullock, Sterling Carr and A. Dal Thomson for Respondents.

PETERS, J. pro tem.—Edward W. Ballentine, claiming to have been found in contempt of an order to pay alimony, and alleging that the trial court was without jurisdiction to

enforce the order, brings this proceeding in prohibition to restrain its enforcement. His original petition also sought a writ of mandate to compel the trial court to dismiss a certain divorce proceeding pending therein. Prior to reaching this court the petition for a writ of mandate was abandoned.

On September 10, 1943, the San Mateo Superior Court entered an interlocutory decree of divorce in favor of Mary T. Ballentine against Edward W. Ballentine. By that decree the property rights of the parties were adjusted, and Edward was ordered to pay Mary $150 a month alimony, and other sums, not here involved, for the support of the children of the marriage. Edward made such payments until November 1, 1943.

Edward, while the San Mateo action in which he was plaintiff and cross-defendant was pending, went to Nevada, and there commenced an action for divorce against his wife Mary. His wife appeared in the Nevada action, pleaded the pendency of the California proceedings, and filed a cross-complaint. On September 18, 1943, the Nevada court granted Mary an absolute divorce from Edward. The Nevada court found that the San Mateo Superior Court had entered its interlocutory decree on September 10th, and in relation to the property rights and alimony provisions of that decree, found that they were "fair, just and equitable." It embodied in its decree the identical provisions for alimony and support contained in the California decree.

On March 13, 1944, Mary upon affidavit secured from the San Mateo court an order to show cause why Edward should not be punished for contempt for failing to make the payments set forth in the California decree. A hearing on this order to show cause at which, apparently, no reporter was present, was held on March 27, 1944, and, after the taking of some testimony, was continued to April 24, 1944. At this last hearing a reporter was present, and the proceedings then had are part of the record. The hearings disclosed that Edward was in arrears in excess of $900, and that he had the present ability to pay $250. At the conclusion of the April 24th hearing, after considerable discussion between the court and counsel, the court stated: "Well, I judge him guilty of contempt and commit him to jail until he pays the sum of $250," and then the court granted a five-day stay. The court entered its formal order the same day but had apparently changed its

mind as to the exact nature of the order to be entered. The order recites the entering of the interlocutory decree, finds Edward is over $900 in arrears, finds that Edward has the present ability to pay $250, but has wilfully refused to make such payment, and then orders Edward to pay to his wife $250 within five days of April 24th. The order states: " . . . it is further adjudged that if within the said (5) five days the said Edward W. Ballentine fails to make said payment of $250.00 on account of said alimony as hereinabove set forth, he be adjudged guilty of contempt in disobeying this Order and that by reason thereof he be imprisoned in the County Jail of San Mateo County, State of California, until he complies with this Order, or unless further ordered by the Court in the meantime." On April 28, 1944, before the expiration of the five-day period contained in the order, Edward filed this petition for prohibition to restrain its enforcement.

It frequently happens in such contempt proceedings that the trial court believes that although the party involved is in contempt, the ends of justice will best be served if such person not be thrown into jail immediately but be given a few days' grace to raise the money so that he can purge himself of the contempt. From a practical standpoint such end can be accomplished by continuing the hearing for the desired period. Had the trial court finally followed this procedure the present controversy could not have arisen. The trial court, however, elected to find that Edward had wilfully violated the provisions of the interlocutory decree in that he had the present ability on April 24th to pay $250, and then ordered that unless such payment was made by April 29th he should be found guilty of a contempt. It is important to here note that petitioner has never been found guilty of contempt of the order of April 24th, he having instituted this proceeding before the five days provided therein had elapsed.

Petitioner urges that the affidavit of Mary Ballentine was insufficient to confer jurisdiction to issue the original order to show cause. The alleged insufficiency refers to the allegations of the affidavit relating to petitioner's ability to pay. The point need not be labored. Allegations relating to the earnings and employment of petitioner were peculiarly within his own knowledge and could therefore properly be made by affiant on her information and belief. (*In re Reilly,*

17 Cal.App.2d 55, 61 [61 P.2d 469]; *Ex parte Brown*, 66 Cal. App. 534, 537 [226 P. 650]; *Selowsky* v. *Superior Court*, 180 Cal. 404, 408 [181 P. 652]; *In re McCarty*, 154 Cal. 534, 537 [98 P. 540]; see cases collected 5 Cal.Jur. § 38, p. 938.)

Petitioner also contends that the trial court erroneously and prejudicially refused to consider his affidavits. The petition alleges that when petitioner's attorney tendered the counteraffidavit on the first hearing an objection to its introduction was sustained. The record shows that on the second hearing on April 24th, counsel for Mary Ballentine withdrew his objection and an order was made admitting it into evidence, over the strenuous objections of petitioner's attorney. In other words, on the hearing of the 24th, counsel for petitioner no longer desired to introduce the counteraffidavit of his client and it was introduced over his objections at the request of counsel for Mary Ballentine. The petition for prohibition alleges that after the affidavit was so introduced it "was neither read to or by respondent judge nor considered by him." The answers of the trial judge and of Mary Ballentine do not expressly deny this allegation, merely alleging that the affidavit was introduced into evidence. The record of the proceedings of April 24th shows that the trial judge was thoroughly familiar with the affidavit and with the supplemental affidavit in question. On pages 10 and 11 of that record it appears that counsel for Mary Ballentine specifically requested the trial judge to read the counteraffidavit and that most of its provisions were then reviewed or discussed. Therefore, even if it be assumed in the face of the presumption that official duty has been performed that the quoted allegation could be considered, and assuming that prohibition could be used to reach such an error, which we doubt, the record shows that the allegations of the affidavits were considered by and known to the trial court.

The main contention now urged by petitioner is that there were two orders fixing the amount of alimony, one of September 10, 1943, and one of April 24, 1944. It is urged that the affidavit filed by Mary Ballentine which was necessary to give the trial court jurisdiction of the constructive contempt was filed for the purpose of charging a contempt of the first order, and that no affidavit has ever been filed charging a contempt of the second order. It is contended that Edward has been found guilty of a contempt of the second order, and

that the court had no power to punish for a constructive contempt of the second order without the filing of an affidavit. The sole authority relied upon to support this argument is *In re McCarty*, 154 Cal. 534 [98 P. 540].

There is a superficial resemblance between the McCarty case and the present one. In that case the husband was ordered to pay the wife $90 per month alimony. The wife filed a proper affidavit charging a default in making the required payments. An order to show cause was issued. At the hearing the trial court found that the husband was able to pay part of the back alimony, and made its order directing that he pay $150 within four days, and further directing that unless he should do so he should be adjudged guilty of contempt. Up to this point the facts of the instant case and those of the McCarty case are identical, but from here on the two cases differ widely on their facts and in the legal problem presented. In the McCarty case the four-day time limit expired. The court then held a hearing and when it developed that the payment ordered four days previously had not been made, the husband was adjudged guilty of contempt. The husband challenged the validity of this last mentioned order by certiorari. The court held that the contempt adjudication was void because the court found the husband guilty of a contempt of the order to pay $150 when there was no affidavit on file charging failure to comply with that order. It was held that the filing of such an affidavit is a jurisdictional prerequisite to a constructive contempt proceeding.

This holding is neither conclusive nor persuasive in the instant case. Here there has been no adjudication that Edward is in contempt of the second order. Before the five-day period fixed in the second order had elapsed this proceeding in prohibition was instituted. There has never been an order finding him in contempt of the second order. In the McCarty case the court did not invalidate the order comparable to the one here involved, but invalidated the order (never made in the instant case) finding the husband guilty of contempt of the second order. The precise holding of the McCarty case is that adjudication of contempt without an affidavit is void. Here no adjudication of contempt has been made.

It is true that the order of April 24th provides that unless the payment of $250 be made within five days, Edward shall "be adjudged guilty of contempt." But in the very

nature of that order it contemplated and required future action. It was not a self-operative order. Obviously, a showing would have to be made of noncompliance and of then present ability to pay. In order to find the husband guilty of contempt of the order of April 24th, the five-day period would have to elapse and then Mary Ballentine would have to file an affidavit charging noncompliance with that order and alleging a present ability to comply with it, and requesting an order to show cause why the husband should not be found guilty of a contempt of the order of April 24th. Upon evidence and findings adverse to Edward on the issues thus presented Edward could then lawfully be adjudged guilty of contempt. This is exactly the procedure Mary Ballentine states that she had intended to follow in the present case, but before she could act petitioner secured the alternative writ of prohibition which stayed all proceedings. ▉ The alternative writ should not have issued. The trial court had not at that point exceeded its powers and was not threatening to do so. If the trial court attempts to proceed in violation of the rule of the McCarty case, ample remedies exist to protect petitioner's rights. We cannot presume, on prohibition, that the trial court will commit error. Since there is a lawful way in which the court can proceed it would be improper to assume that it intends to proceed unlawfully. Prohibition is not available in such circumstances.

▉ In his first brief filed in support of the application for the writ petitioner urged that the Nevada decree of divorce superseded the earlier decree, apparently upon some theory of merger. It was therefore urged that the California court was without jurisdiction to enforce the California decree. In his various briefs filed in this court the point is not mentioned, and has apparently been abandoned. The point is without merit. The San Mateo court rendered its interlocutory decree on September 10, 1943. The Nevada court granted Mary Ballentine an absolute decree of divorce on September 18, 1943. The California decree was pleaded in the Nevada action. In its findings of fact (finding No. 6) the Nevada court found that the California court had entered its decree on September 10, 1943, and then found "that said interlocutory decree settled the property rights of the parties, support of the said Mary T. Ballentine, and the custody and support of the minor children . . . and the Court finds that said

interlocutory decree is fair, just and equitable in all matters to which it pertains.'' The Nevada court then included in its decree the identical provisions as to support contained in the California decree. It is quite apparent that so far as the issue of support is concerned (and such issue is severable from the issue relating to the divorce of the parties—*Newell v. Superior Court*, 27 Cal.App. 343 [149 P. 998]; *Parnham v. Parnham*, 32 Cal.App.2d 93 [89 P.2d 189]), the Nevada action was in legal effect an action on the California judgment. In such a situation the later judgment on the judgment does not supersede the earlier judgment. (*Moore v. Justices of Municipal Court of City of Boston*, 291 Mass. 504 [197 N.E. 487]; *Lilly-Brackett Co. v. Sonneman*, 163 Cal. 632 [126 P. 483, Ann.Cas. 1914A 364, 42 L.R.A.N.S. 360]; note 44 A.L.R. 457, at p. 462; Restatement of the Law of Conflict of Laws, § 450, particularly note p. 537; 2 Beale on Conflict of Laws, § 450.17, p. 1427.) ▮ There is no danger of double liability under the two judgments. Payment of one would discharge the other. (Restatement of the Law of Conflict of Laws, § 442.)

For the foregoing reasons the alternative writ of prohibition is discharged and the petitions for a peremptory writ of prohibition and for a writ of mandate are denied.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.