Estate of Carlton A. Shively, Deceased, John E. D. Grunow, Administrator v. Commissioner.
Estate of Shively v. Commissioner
Docket No. 64312.
United States Tax Court
T.C. Memo 1958-196; 1958 Tax Ct. Memo LEXIS 28; 17 T.C.M. (CCH) 965; T.C.M. (RIA) 58196; November 26, 1958
John W. Boyd, Esq., for the petitioner. Raymond T. Mahon, Esq., for the respondent. BRUCE Memorandum Opinion BRUCE, Judge: Respondent determined a deficiency in estate tax due from the Estate of Carlton A. Shively in the amount of $2,863.58. Certain of the adjustments made by respondent are not in dispute. The only issue presented for decision involves a deduction claimed for estate tax purposes relating *29 to the estate's obligation to make support payments to the decedent's former wife, as provided in a separation agreement subsequently ratified by a divorce decree. The parties orally stipulated at the trial that in the event petitioner prevailed on this issue the amount of the allowable deduction would be stipulated. The facts have been stipulated and they, together with the attached exhibits, are adopted as our findings of fact. Carlton A. Shively, the decedent, died intestate on July 8, 1952, at New York, New York. At the time of his death, the residence of the decedent was Greenwich, Connecticut. Letters of administration were issued on August 5, 1952, by the Probate Court, Greenwich, Connecticut, to John E. D. Grunow. The decedent was born on October 18, 1890. Marie Wilson Shively was born on January 27, 1907. The decedent and Marie Wilson Shively were married March 26, 1927, and they had one son, Glenn Shively. On May 7, 1930, a separation agreement was entered into between the decedent and his wife. Said agreement provided, inter alia, for the payment by decedent of certain amounts for the support of Marie and Glenn from the effective date of the agreement. It was further *30 provided in the event Glenn attained the age of 21 and Marie had not remarried, that the decedent agreed to pay Marie the sum of $40 per week during her lifetime so long as she remained unmarried. It was also provided that such payments should be a charge upon decedent's estate in the event he predeceased Marie. On August 7, 1930, decedent and Marie entered into an amendment to the agreement of May 7, 1930. The provisions of said amendment are not pertinent to the issue presented in this case. On August 28, 1930, a judgment and decree of divorce was duly made and entered in the Second Judicial District Court of the State of Nevada, County of Washoe. This decree adopted, approved, confirmed and ratified the terms of the separation agreement dated May 7, 1930, as amended on August 7, 1930. The deceased was survived by Marie and by their son, Glenn. Marie remarried in June, 1953. From the date of decedent's death on July 8, 1952, until her remarriage in June 1953, Marie was paid $40 per week from the decedent's estate pursuant to the separation agreement of May 7, 1930, as ratified by the divorce decree of August 28, 1930. The total sum so paid Marie during this period was $2,079.96. *31 Upon her remarriage in June 1953, the aforementioned payments to Marie ceased. After her remarriage Marie had no enforceable claim against the decedent's estate under the laws of the State of Connecticut. The estate tax return for decedent's estate was filed by the administrator on July 28, 1953, with the director of internal revenue at Hartford, Connecticut. The amount of $27,058.30 was included in Schedule K of the estate tax return as a claim against the estate. This is the amount which the petitioner claims as the present value of the estate's liability to make the payments to Marie in accordance with the separation agreement of May 7, 1930, as ratified by the divorce decree of August 28, 1930. The aforesaid amount of $27,058.30 was claimed as a deduction from the gross estate in the recapitulation contained in Schedule O of the estate tax return. In the notice of deficiency the respondent disallowed the claimed deduction of $27,058.30 and determined that the allowable deduction was $8,442.33, for the reason that the excess of the claimed deduction over the deduction determined to be allowable was not based upon a good consideration in money or money's worth. Petitioner assigned *32 error to this adjustment. On February 5, 1958, the respondent filed an amendment to his answer in this proceeding in which he claimed an increased deficiency in the amount of $1,166.05, making a total deficiency of $4,029.63. As grounds for the increased deficiency, the respondent has alleged that the deduction allowable from the gross estate for support payments owed to the decedent's former wife is limited to $2,079.96, which is the amount she actually received from the decedent's estate. Such allegation of increased deficiency is also disputed by petitioner. It is well settled that amounts paid from a husband's gross estate in accordance with a separation agreement fixing the scope of the husband's obligation of support and incorporated in a divorce decree are deductible as claims against the estate within the meaning of section 812(b)(3), Internal Revenue Code of 1939.[1] See Estate of Pompeo M. Maresi, 6 T.C. 582, affd. 156 Fed. (2d) 929. It is recognized by the parties that the commuted value of an estate's continuing obligation to make periodic payments similar to those involved here, may be determined by actuarial computation. We so held in Estate of Pompeo M. Maresi, supra. *33 Respondent concedes that the amounts paid by the estate are deductible. He argues, however, that Marie relinquished her right to payments upon her remarriage. Therefore, he argues, no additional deduction is allowable with respect to such claim because no further amount will in fact be paid. Petitioner contends that the amount of the deduction must be determined as of the date of the decedent's death and argues that the allowable deduction is equal to the commuted value of the estate's liability to make the $40 per week payments to Marie as determined by actuarial methods. The nub of the controversy is whether the actual fact of Marie's remarriage may be substituted for the actuarial *34 determination of her probability of remarriage in the light of the facts and circumstances existing at the time of the decedent's death. In Ithaca Trust Co. v. United States, 279 U.S. 151, the Supreme Court announced the general principle that for Federal estate tax purposes, "The estate so far as may be is settled as of the date of the testator's death." In that case the Court held that the fact of a life tenant's premature death could not be substituted for the actuarial computation of the life tenant's life expectancy for purposes of determining the value of the deduction for a charitable remainder. In Estate of Pompeo M. Maresi, supra, we applied the principle announced in Ithaca Trust Co. and allowed as a deduction under section 812(b)(3) an amount which represented the commuted value of the estate's obligation to make furture support payments to the decedent's former wife. The Commissioner acquiesced in that decision, 1946-2, C.B. 4, and it has been noted with approval in subsequent decisions. See Harris v. Commissioner, 340 U.S. 106; Estate of Myles C. Watson, 20 T.C. 386, affd. 216 Fed. (2d) 941. The respondent *35 argues that the principle established in Ithaca Trust Co. is not applicable here. The substance of his contention is that the principle of that case should be limited to those situations where the question involved is the determination of the amount of charitable bequests which are deductible under section 812(d), Internal Revenue Code of 1939. He contends that deductions under section 812(b) do not come within the principle of that case. He argues that items deductible under section 812(b) are to be determined and valued during the course of the administration of the estate in the same manner as funeral and administration expenses. In support of his position respondent relies upon Jacobs v. Commissioner, 34 Fed. (2d) 233, affirming 9 B.T.A. 636, certiorari denied 280 U.S. 603; Estate of Ethel M. DuVal, 4 T.C. 722, affd. 152 Fed. (2d) 103, certiorari denied 328 U.S. 838; and Estate of William P. Metcalf, 7 T.C. 153, affd. (C.A. 6, June 10, 1947) (unreported). Those cases are not apposite here. Each involved a situation where the estate was disputing its liability for a claim, or where the claim *36 was compromised or relinquished. The Supreme Court has indicated that post death occurrences of this nature are not controlled by the principle of Ithaca Trust Co. See Helvering v. Safe Deposit & Trust Co., 316 U.S. 56. It is to be noted that all of those cases involved situations in which the event considered was not subject to a probable estimate at the time of the decedent's death. None of those cases stands for the proposition that actual events occurring after the decedent's death may be substituted for the estimate of probable events made as of the time of the decedent's death and based upon circumstances as they existed at that time. Cf. Lincoln Rochester Trust Co. v. McGowan, 217 Fed. (2d) 287. In the instant case it is undisputed that Marie's claim against the estate was enforceable at the time of the decedent's death. The claim was not compromised nor was it relinquished by Marie. The claim merely terminated upon her remarriage, in accordance with the terms of the instrument by which it was established. This factor was known at the time of decedent's death and is a factor in the actuarial computation of the value of the claim. As noted above, *37 we have held that obligations of support in which this factor is involved may be valued at the time of the decedent's death. In accordance with the principle of Ithaca Trust Co. and Estate of Pompeo M. Maresi, both supra, we hold for the petitioner on this issue. The parties having agreed to stipulate the amount of the allowable deduction, Decision will be entered under Rule 50. Footnotes
1. Sec. 812. NET ESTATE. For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate - * * *
(b) Expenses, Losses, Indebtedness, and Taxes. - Such amounts - * * *
(3) for claims against the estate, * * *
as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered, * * *↩