ESTATE OF SAXTON W. BARRETT, DECEASED, SECURITY PACIFIC NATIONAL BANK, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2672–69. Filed September 16, 1971.

*John A. Ruskey*, for the petitioner.
*Paul G. Wilson*, for the respondent.

OPINION

RAUM, *Judge:* The Commissioner determined a deficiency of $27,581.26 in the estate tax of the Estate of Saxton W. Barrett. The only issue remaining for decision is the deductibility, under section 2053, I.R.C. 1954, of $38,475.69, representing claims of Virginia R. Barrett, decedent's former wife. The facts have been stipulated.

The decedent, Saxton W. Barrett (Barrett), died testate on December 29, 1964, a resident of the State of California. Security Pacific National Bank, a California corporation, was appointed executor of his will. Its principal office was in Los Angeles, Calif., at the time the petition herein was filed. Barrett's estate tax return was filed with the district director of internal revenue at Los Angeles.

Barrett and Virginia R. Barrett (Virginia) were married on May 6, 1939, in Rockton, Ill. They became residents of California in 1947. During their marriage Barrett purchased various life insurance policies in which Virginia was named beneficiary. Included among them were the following six policies:

| Insurance Co. | Policy No. | Date of issue |
|---|---|---|
| Travelers Insurance Co | 2201934 | 10/28/41 |
| | 2230064 | 8/7/42 |
| | 2230065 | 8/7/42 |
| | 2566864 | 2/8/52 |
| National Life Insurance Co | 797943 (also numbered No. D-70816) | 5/25/45 |
| Connecticut Mutual Life Insurance Co | 1,001,648 | 2/9/39 |

In 1962 the Barretts separated, and on January 24, 1963, they executed a property settlement agreement. Under the agreement Barrett and his estate were obligated to make specified payments to Vir-

ginia for her support until her death or remarriage. The agreement also included the following provision concerning a Travelers Life Insurance Co. policy on Virginia's life and the six life insurance policies described above, whereby Barrett conveyed to Virginia as her separate property—

That certain life insurance policy, being Policy #2588624, issued by The Travelers Insurance Company on Wife's life, and Husband agrees to continue paying the premiums upon said policy as they fall due during such period of time as Husband is obligated to pay for Wife's support and maintenance pursuant to this agreement. Husband shall also, during such period maintain in force, unencumbered, the policies of insurance described in item 6(b) of Exhibit "A" hereto, shall irrevocably name Wife as primary beneficiary thereon, and may cause all settlement options pertaining thereto to be made so as to provide for monthly payments to Wife * * *

In addition the following paragraph provided for incorporation of the agreement in a judgment of divorce or separate maintenance:

It is agreed that this property settlement agreement, or any portion thereof, may be incorporated in any judgment of divorce or separate maintenance hereafter rendered by any court of competent jurisdiction, and that the court may order and enforce the performance of the executory provisions hereof.

Both parties were represented by independent counsel in connection with the property settlement agreement.

In 1963 Barrett and Virginia obtained an interlocutory judgment of divorce (the California judgment) in the Superior Court of the State of California for the County of Los Angeles. The judgment recited that Barrett, as plaintiff and cross-defendant, had consented to the dismissal of his complaint; that Barrett had waived his right to appeal any judgment of divorce against him; and that Virginia, as cross-complainant, was entitled to a divorce from her husband. The judgment also approved and incorporated the property settlement agreement of January 24, 1963 in its entirety:

Now, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED:

\*      \*      \*      \*      \*      \*      \*

(4) That said Property Settlement Agreement between cross-complainant and cross-defendant, dated January 24, 1963, which is in words and figures as follows, is hereby approved and incorporated into and made a part of this decree, and the parties, and each of them, are ordered to perform all executory provisions thereof * * *

The interlocutory judgment was filed on January 28, 1963, and was entered by the court on February 5, 1963. The Barretts never obtained a final decree of divorce from a California court.

Subsequent to the entry of the California judgment, Barrett commenced proceedings for divorce from Virginia in the Second Judi-

cial District Court of the State of Nevada in and for the County of Washoe. Barrett's complaint, dated March 14, 1963, alleged that he had been a bona fide resident of the County of Washoe for the past 6 weeks and sought a divorce from Virginia on the grounds of mental cruelty. The complaint (which identified Barrett as "Plaintiff" and Virginia as "Defendant") made specific reference to the property settlement agreement of January 24, 1963:

Plaintiff complains of the defendant and for cause of action alleges:

\*       \*       \*       \*       \*       \*       \*

IV.

That the parties hereto, by written Agreement by them duly made, executed and entered into for such purpose, dated the 24th day of January, 1963, have agreed upon and made full settlement of all and singular their respective property rights, and all matters pertaining to the support and maintenance of the defendant, and all matters concerning the care, custody, control, support, maintenance and education of their minor children; and that said Agreement is fair, just, reasonable and equitable.

Barrett's request for relief was confined to the following sentence and made no specific reference to the property settlement agreement:

WHEREFORE, plaintiff prays judgment against the defendant, as follows:

I.

That he be granted an absolute Decree of Divorce from the defendant, and that the bonds of matrimony now and heretofore existing between himself and the defendant be dissolved, and that the parties hereto be released from all the obligations thereof and restored to the status of unmarried persons; and for such other and further relief as to this Court may seem just and equitable in the premises.

In her "Answer and Counterclaim" to Barrett's complaint, Virginia admitted the allegation contained in paragraph IV of the complaint, relating to the property settlement agreement, and also alleged the following with regard to the agreement:

IV.

That the property rights of the plaintiff and defendant, and all matters pertaining to the support and maintenance of the defendant, and all matters concerning the care, custody, control, support, maintenance and education of \* \* \* [the minor children of the parties] have been settled and decreed in accordance with the terms and provisions of an Interlocutory Judgment of Divorce, entered February 5, 1963, in the Superior Court of the State of California, for the County of Los Angeles, No. NED–3562, in the proceeding entitled SAXTON W. BARRETT, Plaintiff and Cross-Defendant, vs. VIRGINIA R. BARRETT, Defendant and Cross-Complainant, in which said California Court approved a Property Settlement Agreement dated January 24, 1963, between plaintiff and defendant, and that the said terms and provisions thereof are fair, just, reasonable and equitable.

By way of counterclaim, Virginia asked that Barrett be denied his request for relief and that she be granted a divorce from him on

grounds of mental cruelty. In addition, Virginia asked the court to approve and adopt the terms and provisions of the California judgment relating to the property settlement agreement:

WHEREFORE, defendant prays judgment that plaintiff take nothing by reason of his Complaint, and,

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

## II.

That the property rights of the plaintiff and defendant, and all matters pertaining to the support and maintenance of the defendant, and all matters concerning the care, custody, control, support, maintenance and education of \* \* \* [the minor children of the parties] having been settled and decreed in accordance with the terms and provisions of an Interlocutory Judgment of Divorce, entered February 5, 1963, in the Superior Court of the State of California, for the County of Los Angeles, No. NED–3562, in the proceeding entitled SAXTON W. BARRETT, Plaintiff and Cross-Defendant, vs. VIRGINIA R. BARRETT, Defendant and Cross-Complainant, in which said California Court approved a Property Settlement Agreement dated January 24, 1963, between plaintiff and defendant, that said terms and provisions be approved and adopted by this Court in all respects and that plaintiff and defendant be ordered and directed to comply with the terms and provisions thereof until, and unless, modified by a court of competent jurisdiction.

In his "Reply" to Virginia's "Answer and Counterclaim," Barrett admitted, *inter alia*, the allegations in paragraph IV of the counterclaim, relating to the California judgment, denied only Virginia's allegation of mental cruelty, and asked that Virginia be denied her prayer for relief.

In a deposition taken on the basis of written interrogatories and submitted to the court in Nevada, Virginia testified that the spouses' property rights had been "settled and decreed in accordance with the terms and provisions of \* \* \* [the] Interlocutory Judgment of Divorce" and that "the terms and provisions of that Judgment are fair, just and equitable." She also responded affirmatively to the following interrogatory:

14. Q. In the event the Court sees fit to grant your prayer for a Decree of Divorce, do you desire the Court to approve the said Judgment and direct plaintiff and yourself to comply with all the terms and provisions thereof, regarding the matters referred to, until, and unless, the same be modified by a court of competent jurisdiction?

As a result of the Nevada divorce proceedings, Virginia was granted an absolute decree of divorce from Barrett (the Nevada decree). The decree made the following provision for the Barretts' property rights:

## II.

That the property rights of the plaintiff and defendant, and all matters pertaining to the support and maintenance of the defendant, and all matters concerning the care, custody, control, support, maintenance and education of \* \* \*

[the minor children of the parties] have been settled and decreed in accordance with the terms and provisions of an Interlocutory Judgment of Divorce, entered February 5, 1963, in the Superior Court of the State of California, for the County of Los Angeles, No. NED–3562, in the proceeding entitled SAXTON W. BARRETT, Plaintiff and Cross-Defendant, vs. VIRGINIA R. BARRETT, Defendant and Cross-Complainant, in which said California Court approved a Property Settlement Agreement dated January 24, 1963, between plaintiff and defendant, an exemplified copy of said Interlocutory Judgment of Divorce having been admitted in evidence in this action and marked defendant's exhibit "1" herein; and the said terms and provisions thereof are hereby approved and adopted by this Court in all respects; and that plaintiff and defendant be, and they hereby are, directed and ordered to comply with said terms and provisions thereof, until, and unless, modified by a Court of competent jurisdiction.

The Nevada decree was signed and filed by the court on March 19, 1963. Neither of the spouses appealed from the decree.

On July 12, 1963, Barrett married Margaret Archer in Michigan. At that time he was domiciled in California. At the time of the trial herein Virginia had not remarried.

On December 29, 1964, Barrett died, a resident of California. Under a will, which he had executed on March 6, 1964, he bequeathed specified household and personal property to his current wife, Margaret Archer Barrett, and placed the residue of his estate in trust, "subject to the rights of my former wife, Virginia R. Barrett, under and by virtue of a property settlement agreement dated January 24, 1963." The will made no reference to either the California judgment or the Nevada decree.

Of the six life insurance policies which Barrett had agreed to maintain in force and unencumbered until Virginia's death or remarriage, five were nevertheless encumbered at the date of his death as the result of loans made against them. The net indebtedness outstanding on the five encumbered policies at the time of Barrett's death was as follows:

| | |
|---|---|
| Travelers policy No. 2201934 | $591. 21 |
| Travelers policy No. 2230064 | 446. 86 |
| Travelers policy No. 2230065 | 452. 42 |
| National Life policy No. D–70816 [or No. 797943] (after reduction for post mortem dividend of $55.60) | 963. 57 |
| Travelers policy No. 2566864 | 1, 173. 65 |
| Total | 3, 627. 71 |

In Barrett's estate tax return, the following amounts were deducted from his gross estate: (1) $3,627.71, representing the total net indebtedness on the five encumbered policies was deducted as a claim against his estate; (2) $2,287.11, representing insurance premiums payable on the Travelers policy insuring Virginia's life, was also

deducted as a claim against his estate; and (3) $32,560.87, representing the value of the six life insurance policies insuring Barrett's life, was deducted as an expense incurred in administering property not subject to claims. Payments in the respective amounts of $3,627.71, $2,287.11, and $32,560.87 were in fact made.

In his statutory notice of deficiency, the Commissioner determined that the foregoing "obligations of the decedent were not contracted for adequate and full consideration in money or money's worth, and consequently do not qualify as deductions under section 2053 of the Internal Revenue Code."

Section 2053(a)[1] provides that in determining the value of the taxable estate there shall be allowed a deduction "for claims against the estate." However, section 2053(c)(1)(A)[2] limits the amount of such deductions "when founded on a promise or agreement" to the extent the claims "were contracted bona fide and for an adequate and full consideration in money or money's worth." In turn, sections 2053(e)[3] and 2043(b),[4] I.R.C. 1954, provide that the relinquishment or promised relinquishment of marital rights in a decedent's property or estate "shall not be considered to any extent a consideration 'in money or money's worth.' "

Petitioner has neither contended nor shown that Virginia's claims were contracted for adequate and full consideration, so as to satisfy

---

[1] SEC. 2053. EXPENSES, INDEBTEDNESS, AND TAXES.

   (a) GENERAL RULE.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

      (1) for funeral expenses,

      (2) for administration expenses,

      (3) for claims against the estate, and

      (4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,

as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

[2] SEC. 2053. EXPENSES, INDEBTEDNESS, AND TAXES.

   (c) LIMITATIONS.—

      (1) LIMITATIONS APPLICABLE TO SUBSECTIONS (a) AND (b).—

         (A) CONSIDERATION FOR CLAIMS.—The deduction allowed by this section in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded on a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth; * * *

[3] SEC. 2053. EXPENSES, INDEBTEDNESS, AND TAXES.

   (e) MARITAL RIGHTS.—

For provisions that relinquishment of marital rights shall not be deemed a consideration "in money or money's worth," see section 2043(b).

[4] SEC. 2043. TRANSFERS FOR INSUFFICIENT CONSIDERATION.

   (b) MARITAL RIGHTS NOT TREATED AS CONSIDERATION.—For purposes of this chapter, a relinquishment or promised relinquishment of dower or curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration "in money or money's worth."

the requirement of section 2053(c)(1)(A) in the case of claims which are "founded on a promise or agreement." Accordingly, if Virginia's claims were "founded on" the Barretts' property settlement agreement, there is no dispute that the limitation of section 2053(c)(1)(A) is applicable and that the contested deductions must be disallowed.

Petitioner's position, however, is that Virginia's claims are founded on the Nevada divorce decree, not on the property settlement agreement, and that the deductions thereby escape the section 2053(c)(1)(A) limitation. Petitioner relies heavily upon *Commissioner* v. *Watson's Estate*, 216 F. 2d 941 (C.A. 2), affirming 20 T.C. 386, acq. 1958–1 C.B. 6; *Commissioner* v. *Maresi*, 156 F. 2d 929 (C.A. 2), affirming 6 T.C. 582, which were cited with approval in *Harris* v. *Commissioner*, 340 U.S. 106, 110; and *Estate of Carlton A. Shively*, 17 T.C.M. 965, P–H. Memo. T. C. par. 58,196. The foregoing cases recognize that a Nevada divorce court has discretion to prescribe a property settlement different from that embodied in a property settlement agreement presented by the spouses for its approval. See *Jones* v. *Jones*, —— Nev. ——, 478 P. 2d 148, 151; *Lewis* v. *Lewis*, 53 Nev. 398, 2 P. 2d 131. According to petitioner, the cited cases further establish that by virtue of such discretion, even where a Nevada divorce decree adopts the provisions of a property settlement agreement, claims arising out of such settlement are "founded" on the Nevada decree, and not on a "promise or agreement," for purposes of section 2053(c)(1)(A). See *Commissioner* v. *Maresi*, 156 F. 2d at 930:

Since the divorce court was free to disregard any allowances made in the separation agreement, the allowances were authentically its own, even in cases where it expressly accepted as proper the allowances actually agreed upon.

Petitioner concludes that since the Nevada decree involved herein adopted the Barretts' property settlement, Virginia's claims are founded on it, and not on "a promise or agreement" within the meaning of section 2053(c)(1)(A).

The Commissioner does not dispute petitioner's view of *Watson*, *Maresi*, *Harris*, and *Shively*, *supra*. Indeed, he has given *Watson* and *Harris* a similar interpretation in Rev. Rul. 60–160, 1960–1 C.B. 374.[5] However, the Commissioner contends that by virtue of the intervening California judgment, the cases cited by petitioner are inapplicable herein. The Commissioner's reasoning is as follows: (1) Unlike the courts in Nevada, the California court lacked discretion, in the absence of fraud or the like, to modify the spouses' property settlement

---

[5] Petitioner does not question the correctness of the Commissioner's position in Rev. Rul. 60–160. However, the precise holdings of the cited cases are not entirely free of ambiguity. See *Commissioner* v. *Watson's Estate*, 216 F. 2d at 943–944.

agreement. *Adams* v. *Adams*, 29 Cal. 2d 621, 624–627, 177 P. 2d 265, 267–269; *Majors* v. *Majors*, 70 Cal. App. 2d 619, 625–626, 161 P. 2d 494, 497. Thus, were it not for the presence of the Nevada decree, Virginia's claims would be founded on the Barretts' property settlement agreement and the deductions would be disallowed. See *Estate of Chester H. Bowers*, 23 T.C. 911, 919–923, acq. 1955–2 C.B. 4. (2) Because of stipulations by the parties filed with the California divorce court, the California judgment had become final—at least with respect to the property settlement—prior to the entry of the Nevada decree. See *Oullahan* v. *Morrisey*, 73 Cal. 297, 14 Pac. 864; *Erlanger* v. *Southern Pac. R. Co.*, 109 Cal. 395, 42 Pac. 31. (3) By virtue of the principles of res judicata and the full faith and credit clause of the United States Constitution, the California judgment bound the Nevada court in the second divorce proceeding; and as a result the Nevada court lacked discretion to modify the Barretts' property settlement agreement which had been adopted by the California judgment.

Petitioner does not question the correctness of the first two steps of the Commissioner's reasoning, but challenges only the third. Petitioner urges that neither Virginia nor Barrett pleaded "res judicata" in the Nevada proceeding and that since res judicata is a defense which must be affirmatively pleaded, the parties waived their right to rely upon it, and the California judgment did not bind the Nevada court.

We note that petitioner relies on the parties' alleged failure to plead res judicata in the Nevada proceeding, and concedes that if either of the parties had pleaded res judicata, the Nevada court probably would have been bound by the California judgment. Indeed, the res judicata effect of a California interlocutory decree was clearly recognized by the Supreme Court of Nevada in *Kraemer* v. *Kraemer*, 79 Nev. 287, 382 P. 2d 394. There a wife sued her husband for divorce in California. A California court granted the wife an interlocutory decree of divorce and ordered her husband to pay her alimony. Within 2 months of the date of the decree, the wife again sued for divorce in Nevada, and the husband pleaded the California decree as res judicata to his wife's renewed request for alimony. The Nevada Supreme Court upheld his plea (79 Nev. at 290, 382 P. 2d at 395):

In taking judicial notice of California law as expressed in reported court opinions of that state (Choate v. Ransom, 74 Nev. 100, 323 P. 2d 700) we find that, though the interlocutory decree is not a final judgment determining marital status (Estate of Dargie, 162 Cal. 51, 121 P. 320; Estate of Seiler, 164 Cal. 181, 128 P. 334; 1 California Family Law, Armstrong, P. 248), it is deemed final in all other respects. (Pereira v. Pereira, 156 Cal. 1, 103 P. 488, 23 L.R.A., N.S., 880; Huneke v. Huneke, 12 Cal. App. 199, 107 P. 131; Borg v. Borg, 25 Cal. App. 2d 25, 76 P. 2d 218; Overell v. Superior Court, 29 Cal. App. 2d 418, 84 P. 2d 789; Parnham v. Parnham, 32 Cal. App. 2d 93, 89 P. 2d 189; Wilson v. Superior Court, 31 Cal. 2d

458, 189 P. 2d 266). In Wilson the court stated, inter alia : "The right to alimony, like other financial and property rights of the parties, is properly at issue at the time the cause of action for divorce is tried and determined, and the ensuing interlocutory decree is intended to bring an end to all matters so litigated and in controversy. * * *" In Estate of Abila, 32 Cal. 2d 559, 197 P. 2d 10, the California Supreme Court held that an interlocutory decree of divorce terminates the obligation of support in the absence of a provision therefor. There is no jurisdiction to grant it later unless the right has been reserved. In the instant case, the right was not reserved, nor did Margaret or William appeal from the interlocutory decree. The time within which they could have done so passed before the Nevada case was tried. The doctrine of res judicata forbids relitigation of the alimony issue in Nevada.[1] [Footnote omitted.]

See also *Wicker* v. *Wicker*, 85 Nev. 141, 451 P. 2d 715, 716–717; *Wise* v. *Wise*, 55 N.M. 461, 235 P. 2d 529; *Miele* v. *Miele*, 25 N.J. Super. 220, 95 A. 2d 768.

We think that in accordance with the ruling in *Kraemer*, the Nevada divorce court involved herein lacked discretion to alter the Barretts' property settlement as decreed by the California court. We think a different result is not called for simply because the words, "res judicata," did not appear in the pleadings in Nevada.

The terms of those pleadings make it clear that both Barrett and Virginia relied upon the "terms and provisions" of the California judgment as dispositive of their property rights, and that there was no dispute between them in this respect. In his complaint to the Nevada court, Barrett alleged that the property settlement agreement of January 24, 1963, had made a final settlement of the spouses' property rights and all matters pertaining to Virginia's support and maintenance and that the agreement was "fair, just, reasonable and equitable." In his prayer for judgment, Barrett requested only an absolute decree of divorce and made no request whatever in relation to the property settlement. In her "Answer and Counterclaim," Virginia admitted Barrett's allegations with respect to the property settlement agreement. She further alleged that the spouses' property rights and all matters pertaining to her support and maintenance had been "settled and decreed in accordance with the terms and provisions of an Interlocutory Judgment of Divorce" in which the California court approved the property settlement agreement and that the "terms and provisions thereof are fair, just, reasonable and equitable." In her prayer for relief, Virginia sought a decree of absolute divorce and asked also that the terms and provisions of the California judgment "be approved and adopted by this Court" and that the spouse be ordered "to comply with the terms and provisions thereof." Finally, in his "Reply," Barrett admitted Virginia's allegations with regard to the California judgment and denied only Virginia's allegations with regard to her alleged grounds for divorce.

We think it evident from the pleadings that both parties treated the California judgment as dispositive of their property rights. While Barrett's complaint alleged only that the property settlement agreement had determined their property rights, Virginia's answer alleged that the California judgment had approved the agreement and settled their property rights; Barrett's reply admitted those allegations. The absence of the words, "res judicata," in the pleadings is thus hardly attributable to the failure of the parties to rely on the California judgment. Plainly they did rely on it. If the absence of those words is significant at all, it reveals that the spouses' property rights were never placed in issue in the Nevada proceeding, and that both parties conceded that the California judgment was dispositive of those rights.

Our view of the pleadings finds support in the language of the Nevada decree itself. The court declared:

## II.

That the property rights of the plaintiff and defendant, and all matters pertaining to the support and maintenance of the defendant, and all matters concerning the care, custody, control, support, maintenance and education of * * * [the minor children of the parties] having been settled and decreed in accordance with the terms and provisions of an Interlocutory Judgment of Divorce, entered February 5, 1963, in the Superior Court of the State of California, for the County of Los Angeles, * * * in which said California Court approved a Property Settlement Agreement dated January 24, 1963, between plaintiff and defendant, an exemplified copy of said Interlocutory Judgment of Divorce having been admitted in evidence in this action and marked defendant's Exhibit "1" herein; and the said terms and provisions thereof are hereby approved and adopted by this Court in all respects; and that plaintiff and defendant be, and they hereby are, directed and ordered to comply with said terms and provisions thereof, until, and unless, modified by a Court of competent jurisdiction.

We think it quite significant that it was the California Judgment of Divorce, not the property settlement agreement, which was described as having been admitted in evidence, and that it was the "terms and provisions" of the judgment, not the agreement, which were approved and adopted in the Nevada decree. Clearly, it was the California judgment upon which the parties relied and which the court affirmed.

Insofar as we can determine, Nevada courts do not make incantation of the specific words, "res judicata," an indispensable prerequisite to use of that defense.[6] In *Bernard* v. *Metropolis Land Co.*, 40 Nev. 89, 160 Pac. 811, the Supreme Court of Nevada considered the sufficiency of a plea of former adjudication. The pleadings did not contain any specific reference to such terms as "res judicata," "former adjudication," or "estoppel;" but the court, without even commenting

---

[6] Nevada courts apply the Nevada law of res judicata in circumstances similar to those presently under consideration. *Clark* v. *Clark*, 80 Nev. 52, 57, 389 P. 2d 69, 71–72.

upon the absence of such terms, upheld the sufficiency of the plea because it adequately set forth the existence of the earlier judgment as a bar (40 Nev. at 99–100, 160 Pac. at 814) :

> Here were allegations setting forth the court, the jurisdiction, the subject-matter, the scope and effect of the action, the connection of the plaintiff with that subject-matter, the final judgment bearing upon and having to do with the subject-matter, the common and general interest of the appellant herein in that subject-matter, and the connection of the plaintiff here with the force and effect of the former judgment. The averments here made were sufficient, in our judgment, to constitute a proper pleading of former judgment affecting the parties.

Cf. *Silverman* v. *Silverman*, 52 Nev. 152, 283 Pac. 593; *Kernan* v. *Kernan*, 78 Nev. 93, 369 P. 2d 451.

Circumstances quite similar to those now before us were considered by the Supreme Court of California in *Ballentine* v. *Superior Court of San Mateo County*, 26 Cal. 2d 254, 158 P. 2d 14. In that case a husband had sued his wife for divorce in Nevada while a previous divorce action in California was still pending. Subsequently the Nevada court granted the wife an absolute divorce. It also found that the California court had meanwhile entered an interlocutory divorce decree and that the provisions of the decree relating to property rights were "fair, just and equitable." The Nevada decree embodied provisions for alimony and support that were identical to those in the California decree. In a subsequent California action stemming from contempt proceedings brought against the husband, the California Supreme Court stated (26 Cal. 2d at 260–261, 158 P. 2d at 17–18) :

> In his first brief filed in support of the application for the writ petitioner urged that the Nevada decree of divorce superseded the earlier decree, apparently upon some theory of merger. It was therefore urged that the California court was without jurisdiction to enforce the California decree. In his various briefs filed in this court the point is not mentioned, and has apparently been abandoned. The point is without merit. * * * It is quite apparent that so far as the issue of support is concerned (and such issue is severable from the issue relating to the divorce of the parties—Newell v. Superior Court, 27 Cal. App. 343, 149 P. 998 ; Parnham v. Parnham, 32 Cal. App. 2d 93, 89 P. 2d 189), the Nevada action was in legal effect an action on the California judgment. In such a situation the later judgment on the judgment does not supersede the earlier judgment. Moore v. Justices of Municipal Court of City of Boston, 291 Mass. 504, 197 N.E. 487 ; Lilly-Brackett Co. v. Sonneman, 163 Cal. 632, 126 P. 483, 42 L.R.A., N.S., 360, Ann. Cas. 1914A, 364 ; Note, 44 A.L.R 457, at page 462 ; Restatement of the Law of Conflict of Laws, § 450, particularly note p. 537 ; 2 Beale on Conflict of Laws, § 450.–17, p. 1427. * * *

To the extent that the court considered the Nevada action as simply an action on the California judgment, its opinion supports our view herein that the Nevada court was bound by the prior judgment and lacked discretion to modify the Barrett's property settlement agreement.

The parties have devoted considerable effort in their briefs toward the issues raised by the occurrence of successive and conflicting judg-

ments in different proceedings between the same parties upon an identical issue. See *Treinies* v. *Sunshine Mining Co.*, 308 U.S. 66; *Davis* v. *Davis*, 305 U.S. 32; *Hammell* v. *Britton*, 19 Cal. 2d 72, 119 P. 2d 333. However, in view of our conclusion that the Nevada court was bound by the California judgment and in view of the fact that the Nevada court approved and adopted the California judgment, we are not faced with the problem of inconsistent judgments.[7]

We uphold the Commissioner's determination.

*Decision will be entered under Rule 50.*

---

[7] We do not understand petitioner to argue that, notwithstanding the Nevada law of res judicata, the Nevada court might have improperly modified the Barretts' property settlement agreement. In any event, such an argument would not prevail, for we are concerned with the extent of the Nevada court's lawful discretion and not with the possibility of an abuse of such discretion. Cf. *Estate of Chester H. Bowers*, 23 T.C. 911, 919–923.