ESTATE OF WILLIAM E. ROBINSON, DECEASED, ELLAN R. HUNTER, FORMERLY ELLAN REID ROBINSON, AND MARSHALL M. CRISER, CO-EXECUTORS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8610–72.    Filed March 24, 1975.

*Dennis W. Hillier,* for the petitioners.
*William H. Newton III,* for the respondent.

TIETJENS, *Judge:* The Commissioner determined a deficiency of $62,082.44 in the Federal estate tax of William E. Robinson (hereafter decedent).

Certain concessions have been made so that the only question remaining for decision is whether, under section 2053,[1] the estate is entitled to deduct the proceeds of life insurance included in the gross estate when those proceeds were paid to decedent's former wife pursuant to the terms of a separation agreement incorporated in a decree of final divorce.

This case was fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The facts which we deem necessary for decision will be referred to below.

Decedent died on June 6, 1969, and, as of that date, was domiciled in Florida. On July 9, 1969, letters testamentary were granted petitioners by the County Judge's Court at West Palm Beach, Fla. Petitioners filed a Federal estate tax return with the director, Southeast Service Center, Chamblee, Ga., on September 10, 1970. The address of petitioners at the time the petition was filed herein was at Palm Beach, Fla.

Decedent and Marguerite Robinson (hereafter Marguerite) were married on June 30, 1929. They separated in 1950 and, on August 10, 1961, entered into a property settlement agreement. Under paragraph 6 of that agreement, decedent agreed "to maintain in full force and effect the insurance policies on his life in the amount of Thirty Five Thousand Dollars ($35,000.00), in

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise stated.

which \* \* \* [Marguerite] is named as beneficiary, and which policies are now in \* \* \* [Marguerite's] possession." Paragraph 9 of that agreement provided as follows:

This agreement shall be presented to the court in said divorce action and the party presenting the same shall request said court to ratify, approve and confirm the same and to incorporate its terms in any decree entered therein; provided, however, that this agreement shall not be merged in such decree but shall survive the same.

On August 15, 1961, the District Court in the Eighth Judicial District of the State of Nevada, in and for the County of Clark, entered a decree of divorce, which included the following:

it is further

ORDERED, ADJUDGED AND DECREED that said Property Settlement Agreement, an executed copy of which was introduced in evidence at the trial of this action, be, and the same is hereby, allowed, confirmed, ratified, approved, and incorporated by reference herein, as though fully set forth herein, provided, however, that the same shall not be merged herein, but shall survive this decree; and that the parties hereto, and each of them, shall perform and comply with all of the terms and conditions therein contained.

At the time of his death, decedent had in full force and effect insurance policies on his life totaling $30,000 with Marguerite as beneficiary. The policies, which were in Marguerite's possession, were in amounts of $10,000 and $20,000, and the insurers were Aetna Life Insurance Co. and the Prudential Insurance Co., respectively. After decedent's death, the insurers paid Marguerite $30,000.

Marguerite filed a claim against the estate for $5,000 in the County Judge's Court in and for Palm Beach County, Fla. That claim represented the difference between the $35,000 insurance which decedent had agreed to maintain and the $30,000 insurance which was actually in force. Petitioners paid that claim.

On decedent's Federal estate tax return, petitioners included the insurance proceeds, undiminished by Marguerite's claims, in the gross estate. On the return, petitioners claimed a deduction of $35,000 representing the insurance proceeds and the $5,000 paid by petitioners to Marguerite. The Commissioner determined that the amount paid by the insurers was not an allowable deduction.

Petitioners contend that the insurance proceeds are deductible by reason of section 2053(a)(4), which provides a deduction for

"such amounts * * * for * * * any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such * * * indebtedness, is included in the value of the gross estate, as * * * [are] allowable by the laws of the jurisdiction * * * under which the estate is being administered." Using many of the arguments contained in Rev. Rul. 71–482, 1971–2 C.B. 334, the Commissioner argues that section 2053 does not authorize the deduction.

In *Estate of Chester H. Bowers,* 23 T.C. 911 (1955), a property settlement agreement, approved and incorporated by reference in a divorce decree, required a decedent to maintain insurance on his life with his former wife as beneficiary. We held that the proceeds were includable in decedent's gross estate but that the proceeds were not deductible from the estate because the obligation to maintain the policies was "founded upon a promise or agreement" which was not contracted for "full consideration" within the requirements of what is now section 2053 (c)(1)(A). In *Estate of Chester H. Bowers,* 23 T.C. at 920, we made the following statement:

Decedent was obligated at his death under the 1932 property settlement agreement to have in force life insurance in the face amount of $50,000 payable to his former wife. If decedent had not fulfilled this obligation, his estate certainly could have been required to make up the difference to the extent of $50,000. *Waxman* v. *Citizens National Trust & Savings Bank,* * * * [123 Cal. App. 2d 145, 266 P. 2d 48 (2d Dist. Ct. App. 1954).] Cf. *Estate of Myles C. Watson,* 20 T.C. 386, affd. (C.A. 2) 216 F. 2d 941. In our opinion this obligation represented an "indebtedness" within the purview of section 812(b)(4) [of the 1939 Code, which is similar to section 2053(a)(4) of the 1954 Code]. The "indebtedness" was discharged with the proceeds of the insurance, and it has been held that to the extent of $17,727.30 the proceeds of the policies should be included in the value of the gross estate. Cf. *Estate of Silas B. Mason,* 43 B.T.A. 813. The indebtedness amounted to $50,000, but only eight twenty-thirds of the "indebtedness" was discharged out of property includible in the gross estate. Therefore, unless otherwise limited by the provisions of section 812(b), the estate is entitled to a deduction of $17,391.30.

It may be true, as the Commissioner points out, that the discussion quoted above was dictum. Nevertheless, our reasoning therein convinces us that decedent's obligation to Marguerite was an "indebtedness" within the meaning of section 2053(a)(4). That indebtedness was "in respect of property" which, "undiminished by such. * * * indebtedness, is included in the value of the gross estate," and we assume that that inclusion was proper

since neither the Commissioner nor the petitioners argue for exclusion. Accordingly, as our language in *Bowers* indicates, the proceeds are deductible unless otherwise prohibited by section 2053. We note that at least one other court has used *Bowers* to conclude that proceeds of insurance similar to those involved therein and herein are deductible. *Gray v. United States,* an unreported case (C. D. Cal. 1974, 34 AFTR 2d par. 147,937, 74–2 USTC par. 13,019).

The Commissioner cites numerous Florida and Nevada cases in an attempt to argue that the deduction is not authorized by section 2053(a). We have considered those cases, and, without discussing them individually, we agree that they establish those propositions for which they are cited. In essence, the Commissioner uses them to argue that Marguerite had no claim against the estate except for the claim arising from petitioner's failure to provide the $5,000, which was paid by the estate and which the Commissioner states would be deductible if not prohibited by section 2053(c)(1)(A). The Commissioner suggests that, since decedent met his obligation to maintain $30,000 in insurance, Marguerite had no claim against the estate and had no right to file those formal claims which the Commissioner, citing *Estate of Frank G. Hagmann,* 60 T.C. 465 (1973), affd. 492 F.2d 796 (C.A. 5, 1974), argues are prerequisite to a deduction under section 2053.

The propositions established by most of the Nevada and Florida cases cited are irrelevant, for the Commissioner confuses subsection (a)(3) of section 2053 with subsection (a)(4), that subsection which petitioners cite as authorizing the deduction. Subsection (a)(4) allows a deduction for claims against property which is included in the gross estate but which might not be "claims against the estate." See, for example, *Estate of Harriet Blair Borland,* 38 B.T.A. 598 (1938). The insurance proceeds went directly to Marguerite without passing through the petitioners' hands, but they were "*included in the value of the gross estate.*" (Emphasis supplied.) An indebtedness, which the Commissioner admits would have been enforced by the Florida courts, existed with respect to the proceeds and was satisfied by them without recourse to a claim against the estate. The Commissioner admits that the estate paid a proper claim as to the $5,000 for which decedent purchased no insurance, but he would have us deny a deduction where decedent fulfilled his obligation

and obviated the need for a claim against the estate. We cannot so hold, for we believe that there was an "indebtedness in respect of" the insurance proceeds and that section 2053(a)(4) allows deduction of the proceeds even though Marguerite had no reason, or right, to file a "claim against the estate" to satisfy that indebtedness.

The Commissioner argues that, even if the insurance proceeds fall within the general rule of section 2053(a), their deduction is prohibited by section 2053(c)(1)(A), which provides that the deduction of an indebtedness "founded on a promise or agreement" shall be limited to the extent it was "contracted bona fide and for an adequate and full consideration in money or money's worth." The Commissioner contends that decedent's obligation to maintain insurance was "founded on" the settlement agreement and that petitioners have not proven consideration. Accordingly, the Commissioner concludes, petitioners are not entitled to the deduction.

*Harris v. Commissioner*, 340 U.S. 106 (1950), reversing 178 F.2d 861 (C.A. 2, 1949), which reversed 10 T.C. 741 (1948), *Commissioner v. Maresi*, 156 F.2d 929 (C.A. 2, 1946), affirming 6 T.C. 582 (1946), and *Commissioner v. Watson's Estate*, 216 F.2d 941 (C.A. 2, 1954), affirming 20 T.C. 386 (1953), clearly support petitioners' argument that, under Nevada law, decedent's obligation to maintain life insurance was "founded on" the divorce decree rather than the property settlement agreement and was a deductible indebtedness. See also *Preston Lea Spruance*, 60 T.C. 141, 153 (1973), affd. 505 F.2d 731 (C.A. 3, 1974); *Estate of Saxton W. Barrett*, 56 T.C. 1312, 1319 (1971). The Commissioner contends that those cases no longer control because of *Ballin v. Ballin,* 78 Nev. 224, 371 P.2d 32 (1962), which, the Commissioner says, establishes the proposition that the rights of parties to a property settlement agreement which survives a divorce decree flow from the agreement rather than the decree.

We are not willing to hold that *Ballin,* which deals with the power of a court to modify an earlier decree, implicitly changes Nevada law so dramatically that *Harris, Maresi,* and *Watson's Estate* must be disregarded. The opinion in *Ballin* contains the following:

Robert further insists that Nevada has recognized that the spouses' agreement is not binding upon the court in the original divorce proceedings.

This is unquestionably true. Lewis v. Lewis, 53 Nev. 398, 2 P.2d 131; Drespel v. Drespel, 56 Nev. 368, 45 P.2d 792, 54 P.2d 226.

The authority to alter the settlement agreement makes any indebtedness established by the agreement and incorporated into the decree an indebtedness "founded on" the decree rather than the agreement. In *Commissioner v. Maresi,* 156 F.2d at 930–931, the Second Circuit said:

we must therefore here decide whether, because the decree of divorce incorporated by reference the separation agreement, Helen G. Maresi's claim against the estate was "founded upon a promise or agreement." That question apparently first arose in 1939, and the Board of Tax Appeals held that, since the divorce court was free to disregard any allowances made in the separation agreement, the allowances were authentically its own, even in cases where it expressly accepted as proper the allowances actually agreed upon. * * * At first blush the distinction may seem a little formal, but on consideration it appears to be sound. One can of course say that a divorce decree is "founded" upon the testimony of the witnesses, and in that sense the decree of the Nevada court in the case at bar was "founded" upon the separation agreement. But it is pretty clear that that is not the sense in which section 812(b) uses the word; rather it means that the legal transaction which creates the obligation is the agreement, and in that sense the allowances are not "founded" upon the agreement but upon the command of the court.

See *Commissioner v. Watson's Estate, supra; Estate of Chester H. Bowers,* 23 T.C. at 920, 922; Rev. Rul. 60–160, 1960–1 C.B. 374. See also *Harris v. Commissioner, supra; Estate of Saxton W. Barrett, supra* at 1319; *Preston Lea Spruance, supra* at 153.

Accordingly, we hold that under section 2053, the estate is entitled to deduct the insurance proceeds.

*Decision will be entered under Rule 155.*